Edmund Lee v. George Patten.—Syllabus.

---

EDMUND LEE, APPELLANT, VS. GEORGE PATTEN, APPELLEE.

RESULTING TRUST—RELIEF ON PRAYER FOR GENERAL RELIEF—ATTORNEY CAN NOT DISCLOSE CONFIDENCES OF CLIENT—LACHES—EVIDENCE. VARIANCE—COLLATERAL ATTACK ON JUDGMENT.

1. Where G., being the owner of a military bounty land warrant, gave it to L. for the purpose of entering with it the number of acres of land that it called for, for the use and benefit of G. and L. entered the land with such warrant in his own name and took a patent thereto in his own name without the knowledge or

consent of G.; and, in ignorance of the way in which such entry had been made, G. took possession of the land at or soon after such entry, and he and his alienees for many years thereafter, with the knowledge of L., exercised acts of ownership over the same; and L. during all that time asserted no adverse claim to or right therein; *Held*, That from such entry a trust resulted in favor of G. and that L. acquired by such entry only the bare legal title, and held it *in trust* for the use and benefit of G. and his alienees; and, that, upon bill filed for that purpose, L. would be decreed to execute the legal title to said land to an alienee of G. who had succeeded to all of G's. rights. therein.

2. The well settled rule is that, although the complainant may not be entitled to the relief specifically prayed for, he may, under the general prayer, obtain any other specific relief consistent with the case made by the bill, and that does not conflict with the relief specifically prayed.

3. Where a written instrument offered in evidence by a complainant in a bill, contains enough to sustain the *material substance* of a pertinent allegation of the bill in reference to it, it is admissible to sustain such allegation, even though such instrument varies, on its face, in an immaterial particular, from the description of it given in such bill.

4. Where a judgment is not void on its face, and is rendered by a court having competent jurisdiction, the presumptions are all in favor of its regularity and validity until vacated by some proper proceeding instituted directly for the purpose of correcting errors therein; and it can not be *collaterally* attacked by parties or their privies, or by strangers whose rights are not affected thereby.

5. The law is very strict in its prohibition against the disclosure by attorneys of communications made to them in confidence by their clients.

6. *Laches* in assailing a fraud will not be imputed until the discovery of the fraud by the party affected thereby.

Appeal from the Circuit Court for Manatee county.

The facts in the case are stated in the opinion of the court.

*Macfarlane & Pettingill* for Appellant.

*J. B. Wall* and *Sparkman & Sparkman* for Appellee.

TAYLOR, J.:

In February, 1882, George Patten, the appellee filed his bill in equity in the Circuit Court for Manatee county against Edmund Lee, the appellant, for the purpose of compelling the defendant to convey to him all that tract of land in Manatee county. Florida, described as being the south half of the south half of section 27, Tp. 34 south, Range 17 east, excepting the west half of the S. W. ¼ of the S. E. ¼ of said section that had theretofore been sold to one Stephen A. Brown. The suit resulted in a final decree in the complainant's favor declaring the title to said land to be in the defendant, Lee, as trustee for the complainant, and ordering him to convey the same by deed to the complainant. From this decree the defendant, Lee, appeals.

The bill alleges, in substance: That about January, 1854, one Robert Gamble, being the owner of a bounty land warrant for one hundred and sixty acres of land, delivered the same over to the defendant, Lee, authorizing and requesting him to locate said warrant for him (Gamble) on the south half of the south half of section 27, Tp. 34 south, Range 17 east. That Lee, in pursuance of said authority and request, located the said warrant on said land for the sole use, benefit and behoof of said Gamble; but, intending and contriving to perpetrate a fraud upon Gamble, entered said tract of land with said warrant in his own name, instead of in the name of the said Gamble as he should have done; and falsely and fraudulently represented to the

said Gamble that he had entered said tract of land in his (Gamble's) name. That Gamble, relying upon the representations of Lee as to the entry of said land, entered upon and took possession thereof with the full knowledge of the defendant, and without objection or protest on his part, cut timber therefrom, paid the taxes thereon, and in every way held and used said lands as his own. That in the year 1858, Gamble, with the knowledge of the defendant, and without objection from him, sold and conveyed said land, with other lands, to John C. Cofield and Robert M. Davis, who were partners under the name and style of Cofield & Davis, taking a mortgage from them on said lands for the purchase money therefor, which mortgage was afterwards assigned to and became the property of one Allen M. McFarlan. That the said Cofield & Davis, with the knowledge of Lee, and without objection from him, entered upon and took possession of said land, cut and used the timber thereon, paid the taxes thereon, and held and used said land as their property. That during the year 1873 said lands were sold under a decree of forecloseure of said mortgage in favor of said Allen M. McFarlan, and were purchased by your orator (George Patten), with the knowledge of, and without any notice, objection, protest or other interference of or from the defendant. That your orator immediately entered upon and took possession of said lands as his own, and paid the taxes thereon, save and except the west half of the S. W. ¼ of the S. E. ¼ of said section, containing ten acres, that was sold by him to one Stephen A. Brown about the year 1877. That during the year 1877 the said Lee, for the first time to the knowledge of your orator, laid claim to said land, and upon investigation thereof your orator ascertained that they had been entered in

his (Lee's) name on or about the 22nd day of September, 1854. That he has applied to the defendant to execute and deliver to him a deed to said land, but he refuses to do so, and now claims said land as his own, and has been endeavoring to sell the same as his property; which claim of said Lee throws a cloud upon the title of your orator to said land, and greatly hinders and obstructs him in the enjoyment thereof. The prayer of the bill, as originally filed, was that the defendant, Lee, be decreed to make, execute and deliver to the complainant, Patten, a good and sufficient deed of conveyance to said land, saving the portion thereof conveyed to said Stephen A. Brown, and prayed also for general relief, such as the facts of the case might entitle him to.

The defendant filed an original and amended answer in which he denies that Gamble authorized or requested him to locate said warrant upon said land for him and for his sole use and benefit; and he denies that he ever represented to Gamble that he had entered said land for him with said warrant. He denies also that Gamble ever took possession of said land, or paid the taxes thereon, or used the same as his own lands. He admits that Gamble cut and used the timber on said land, but avers that it was done under an express agreement between him and Gamble. He admits obtaining from Robert Gamble the bounty land warrant with which he made the entry of this land, but says that he got it from him for his own use and benefit for the purpose of procuring therewith for himself another tract of land in the same locality upon which another party had made a settlement and improvements, which improvements he had traded for, and upon which there was a quantity of live oak timber, and that when he obtained the warrant from Gamble

he agreed verbally with him to allow him to cut this live oak timber therefrom. That no price was ever agreed upon to be paid by him to Gamble for the land warrant, and that all the consideration he ever expected to pay for said warrant was to allow Gamble to cut the timber on said land, and considered the passing of said warrant to him by Gamble more a gratuity than for any money consideration. That they were all laboring to build up a good community for the general welfare, and working in perfect harmony and in close and intimate relations of friendship. That Gamble was engaged in the business of getting live oak timber for market, and the live oak timber situated on the tract of land that he desired to locate for himself with said warrant, being of no value to him, but of great value to Gamble, who was in that business, he agreed to allow Gamble to cut the live oak therefrom, whenever he should enter same, as a remuneration for his kindness in letting him have the warrant. He avers that Gamble duly assigned and transferred the warrant to him as his property, and that ever since the date of such transfer to him it has been his property, and he at once forwarded it to the United States District Land Office to be located upon the land that he thus desired and for the improvements and buildings upon which he had traded, as aforesaid, with another party, but was at once informed by the land officers that it could not be located on that particular land. That upon receiving this information he at once called upon Gamble for advice as to how he (the defendant) could utilize said warrant, upon which Gamble told him to locate the warrant upon any land that he chose, so that he (Gamble) might cut the timber therefrom. That he never did agree with Gamble to return said warrant to him, or to locate it on any land.

for Gamble's use and benefit; and he denies that he ever represented to Gamble that he had located it on any land for his (Gamble's) use and benefit. That the said land warrant was assigned to him more as a gratuity than for any money consideration; and that all the consideration Gamble ever expected or claimed or desired to receive for the same was the use of the timber on whatever land might be located therewith by the defendant. He denies any promise or agreement to locate said warrant upon any land for any one save himself; and avers that it was located by him for his own use and benefit in the absence of any request or agreement or instruction to locate it for the benefit of Gamble or any one else; but that having promised and agreed to let Gamble have the use of the timber therefrom, and acting in good faith, he entered the land in dispute with said warrant, lying one mile up and down the Manatee river, so as to give said Gamble the widest sweep at the timber. That at the time he obtained this warrant from Gamble such warrants were of but little value, the prices therefor then ranging from $25 to $50. That the land warrant having been assigned in writing to Edmund Lee, it could not be located on land for the use, benefit and behoof of any one else but him. He avers in his answer that the lands embraced in the entry of said warrant were considered valueless save for the timber thereon. That besides Gamble's business of timber-getting, he was also engaged in the cultivation of sugar cane on a large scale on the north side of Manatee river, and that said land to him would have been valuable only for the timber that was needed in the manufacture of sugar, as well as for the various uses of his farm. He denies that Gamble ever laid claim to any of said land, but admits that he did cut and use the timber therefrom that was of great money

value. He avers that in 1855 he sold and conveyed to Robert Gamble another tract of land in the same neighborhood for the sum of $300, and that the only credit that Gamble is or ever was entitled to on the above purchase is the sum of $70 or $75 paid to the defendant for him by one Allen M. McFarlan, and the price of said land warrant that was not over $25 to $50. That notwithstanding this land was entered by defendant in 1855 in his own name, yet during all these years neither Robert Gamble nor any one else has ever applied to him for any conveyance thereof. That at the time of the entry there was no inducement for him to perpetrate any fraud on Gamble, since at that time the land was valuable to Gamble only for the timber thereon to which he was entitled, and that he did use for the various purposes of his farm. That at that time said land was worth no more than ten cents an acre, and for many years thereafter could not have been sold for any sum much greater than that. That his entry made in his own name in 1885 became and was a matter of public record in the United States Land Office, but that he did not obtain the patent thereto until during the year 1877. That the civil war of 1861 came on and he left the State to join the army, and did not return until the close of the war. In the meantime the United States Land Office at Newnansville had been broken up and its business suspended by the war, and he had lost his wife soon after the war, and under his many trials and difficulties he had well nigh lost sight of said land, as they were of such little value at that time he paid but little attention to them; in fact he had lost sight of them entirely, until some one else was informed from the land office that it had been entered by him in 1855, when he at once in 1877 procured an attorney, one E. M. Graham, to obtain the

patent to him therefor; and that as soon as the pat-
ent was received he at once had it put on record in
Manatee county, Florida.   He denies any knowledge
of the sale of said land by Gamble to Cofield & Davis.
He denies any knowledge of this land being embraced
in the mortgage from Cofield & Davis to the Gambles
that was assigned to Allen M. McFarlan, or of its being
included in the decree of foreclosure and sale there-
under to the complainant, Patten.   He avers that no
one has entered upon, took possession of, cultivated or
improved any part of said land save and except one
Stephen A. Brown, who, in the year 1874 or 1875, built
a house on the west half of the south-west quarter of
the south-east quarter of said section 27, for which the
defendant, Lee, has paid him the sum of $600, and
which said land and houses he sold afterwards to
one Hubbard.   He avers that since the receipt of
his patent in 1877 he has paid all taxes on the land.

After replication to the answer, and after the testi-
mony was all taken, and at the final hearing of the
cause, the complainant was permitted to amend the
special prayer of his bill so as to include therein a
prayer "that the defendant, Edmund Lee, might be
decreed and declared to be the trustee for the comp-
plainant over said land."   This ruling is assigned and
urged here as error.   There is no merit in this assign-
ment.   The amendment asked for was wholly immate-
rial.   It did not change in the least the case as made
by the bill and by the proofs, and did not affect the
defense made by the answer and sought to be estab-
lished by the defendant's proofs.   In fact the amend-
ment asked for and made was altogether useless and
immaterial.   The facts set up in the bill and fully sus-
tained, as we think, by the proofs made out a clear
case of a resulting trust in reference to the lands in

controversy; and showed, without any express allega-
tion, to that effect, that it was a case where the de-
fendant held the legal title to said lands, from an
equitable standpoint, as trustee for Robert Gamble and
his alienees; and, under the prayer for general relief,
the court could, with propriety, have adapted its decree
to the case made by the bill and proofs, and could
therein have declared the defendant to be trustee for
the complainant, holding the legal title to the land in
trust for his use and benefit, without the special
amended prayer.    Merchants National Bank of Mus-
kegon vs. Hogle, 25 Ill., App., 543; Hill vs. Beach, 12
N. J. Eq., (1 Beasley), 31; Enfield Toll Bridge Co. vs.
Hartford & New Haven R. R. Co., 17 Conn., 40.    In
Watts vs. Waddle, 6 Peters, 389, the court says of the
general prayer for relief: "Under this prayer, any
relief may be given for which the basis is laid in the
bill." The well-settled doctrine is, that although the
complainant may not be entitled to the relief specifi-
cally prayed for, he may under the general prayer
obtain any other specific relief consistent with the case
made by the bill and that does not conflict with the
relief specifically prayed.    Beach's Modern Eq. Prac.,
Section 91.

The complainant to sustain the allegation of his bill,
that Robert Gamble in 1858 sold and conveyed said
tract of land to Cofield & Davis, introduced in evidence
a deed executed by the executors of John G. Gamble,
deceased, to Cofield & Davis, conveying the land in
controversy, which deed was executed by Robert Gam-
ble, as one of the executors of John G. Gamble, but
in his own individual right as well, the other executors
joining him in the execution of such deed.    The ad-
mission of this deed is also assigned and urged as error
upon the ground that it does not sustain the allegation

of the bill that Robert Gamble individually conveyed the disputed land to Cofield & Davis. The groundlessness of this assignment is self-evident. Because Robert Gamble included a tract of land that he owned in his own individual right in a deed of conveyance executed by him and others as executors, that also conveyed lands of his testator, using apt words therein, as in this deed, to carry his own individual rights, interests and holdings, makes it none the less his own individual conveyance in so far as the land embraced therein is concerned that he owned in his own individual right. Two or more individuals may each solely own separate and distinct parcels of land; they may all join individually in the execution of one conveyance including and covering the aggregated parcels of each of them. Such a conveyance, as to the separate holdings of each, would be the individual conveyance of each of them.

The next assignment of error is the admission in evidence of a deed made by one Curry, as referee or special master, to the complainant, Patten, conveying the land in dispute, which deed recites that it is executed in pursuance of a decree of foreclosure of mortgage in a cause wherein the executors of Allen M. McFarlan are complainants, against Cofield & Davis. The admission of this deed is urged as error upon two grounds: (1) Because of its variance from the allegations of the bill, which were, that Curry, the referee, conveyed to Patten under a decree of foreclosure in favor of Allen M. McFarlan, instead of, as this deed recites, in favor of McFarlan's executors; (2) and because the deed shows upon its face that the foreclosure proceedings under which it was executed were illegal and void because it shows that said proceedings were originally instituted at law under the code practice

then in force in this State, when there was no court of chancery in existence here, as distinguished from a court of law, and that the proceeding culminated on the equity side of the court. That under the code procedure the sale should have been made under an execution as at law, instead of directly under the decree.

As to the first of these grounds of objection, we do not think there was error in admitting the deed. The *material substance* of the allegation in the bill was, that Patten acquired his title to the land by means of the foreclosure of the mortgage that had been given by Cofield & Davis to Gamble to secure the purchase money of the land in dispute; that Cofield & Davis' title had passed to him by means of the foreclosure of such mortgage. The allegation that Allen M. McFarlan was complainant in this foreclosure proceeding, was only a part of the identification or description of the medium by which Patten became possessed of Cofield & Davis' title, and because the deed offered in evidence to sustain such devolution of title shows that the foreclosure proceedings were had in the name of Allen M. McFarlan's executors instead of in his own individual name, as alleged, is not such a material variance from the *allegata* as should have excluded the deed. The deed admitted, even with the variance pointed out, contained enough to sustain the material substance of the allegation of the bill. 1 Greenleaf on Evidence (15th ed.), Sections 56, 57, and citations.

Neither was there any error in admitting this deed because of the second objection urged against the same. The foreclosure proceedings, it seems, were begun under the act of February 19th, 1870, entitled: "An act to simplify and abridge the practice, pleadings and

proceedings of the courts of this State," popularly known as the "Code Practice," that abrogated the distinctive lines of demarkation between the law and equity jurisdictions of the courts, and blended legal and equitable remedies together in the same proceeding, but at the time the decree of foreclosure was rendered, July 30th, 1873, the "Code Practice" had been repealed by Chapter 1938, approved February 24th, 1873, by the second section of which latter act all laws, practice, pleadings, rules and proceedings existing in this State at the time of the passage of said "Code Practice" act which were repealed or supplied by the same, were revived. It is true that by Section eleven of the latter act of February 24th, 1373, it is provided that all suits then already commenced, and all pleadings then already in, should not be affected by the provisions of that act, but should be proceeded in as if the latter act had not been passed. But it is also true that the court that rendered the decree of foreclosure, *viz:* the Circuit Court, did have full jurisdiction of the subject-matter and of the parties in the cause, and according to subdivision 2 of Section 194 of said code, the judgment of foreclosure was such a judgment as required the direct action and signature of the judge to give it force and effect. In the judgment thus signed by the judge that is recited in the deed objected to, we find that Curry, the referee therein appointed to enforce the same, is directed to sell the lands in said judgment described at public auction *according to law.* Nowhere in this judgment of foreclosure is the referee ordered, directed or required to sell said land under and by force of the judgment itself without the process of *execution* to enforce the same. And neither does the said Curry in his said deed recite or declare

that he sold the said lands directly under said judgment and without an execution, but he does declare in said deed that he "did advertise said land and did sell the same in *conformity with the provisions of said decree.*" The decree or judgment directed the sale to be made *according to law;* the presumption, for the purpose of this collateral attack upon same, is that it was made in conformity to law. While there might have been some irregularities and informalities attendant upon the judgment or decree of foreclosure, still we do not find it to be clearly void upon its face, nor even clearly voidable; the rule then is, where the judgment is such a one as the court had jurisdiction to render, that the presumptions are all in favor of its regularity and validity until vacated by some proper proceeding instituted directly for the purpose of correcting errors therein, and that it can not be attacked *collaterally* as is sought to be done in this case.

The court admitted in evidence a written agreement signed by the counsel representing all the parties, in which it was stipulated as an admission of fact on the part of the complainant's counsel, that the land warrant with which the defendant, Lee, entered this land was formally transferred *to him by Robert Gamble* in the presence of two witnesses, and was acknowledged before a judicial officer. The admission of this agreement is the fourth error assigned, and the objection urged against it is, that in contradiction of the documentary evidence in the cause, "it is a unilateral admission, by the complainant's counsel alone, that the warrant with which Lee entered the land had been transferred *by Lee* to Gamble in the presence of witnesses and a judicial officer," etc. The agreement in the record before us does just the reverse of this contention, and represents that the transfer was *by Gam-*

*ble to Lee* in the presence of witnesses, etc.   This objection falls to the ground, then, for the want of facts to sustain it.   But even if this were not true, in the light of all the evidence in the cause, its admission would have been immaterial error.

The fifth and sixth assignments of error are objections to certain parts of the evidence of the witnesses, E. M. Graham, George Patten and Robert Gamble. Without setting out in detail the particular features of the evidence of these witnesses that is objected to, we will say that we have examined them carefully and find no merit in the objections made except to that of E. M. Graham.   The chief objection to Graham's evidence was, that it was a disclosure of confidential communications made to him by the defendant, Lee, while he occupied the relationship of attorney towards Lee as his client.   We think that the evidence of Graham objected to was subject to the objection made. He testifies, it is true, that the whole scope of his employment by Lee was for the sole purpose of writing to the land office at Gainesville, Florida, to obtain the patent that had been long before issued to Lee for the land in dispute.   That when the patent was thus obtained by him and delivered to Lee, the sole purpose of his employment by Lee was accomplished and the relationship of attorney and client ended.   But he testifies further that he had been employed by Lee to institute proceedings in trespass against the complainant concerning this very land, and he does not disclose in his evidence whether the conversation with Lee that he relates, did not transpire at the time of or subsequent to that employment.   So jealous is the law against the disclosures by attorneys of communications made to them in confidence by their clients, that we think under the circumstances of this case Mr. Gra-

ham's evidence as to what Lee told him should have been excluded. The objection to Patten's evidence and to other parts of Graham's evidence is, that where they undertake to rehearse the different devolutions of title from Gamble to Patten, the titles themselves were the best evidence and should have been introduced. The titles mentioned by them were introduced, and their oral rehearsal of them was simply an immaterial passing mention of them, not intended to establish the existence of the titles mentioned, but simply as a connecting link in their statements. In view of the fact that the hearing was before the judge himself, who could discriminate closely from the evidence, that was all in writing, between the legally competent and incompetent parts of it, we do not think these objections thereto should have been given any weight. Without considering the improper evidence mentioned of E. M. Graham, we think there is an abundance of evidence to sustain the decree appealed from.

The seventh, eighth and ninth objections urged against the correctness of the decree appealed from are, that it is contrary to law and equitable rules; that it is not supported by, and is inconsistent with, the evidence; and because it is founded upon facts and conclusions that are immaterial to the issues made. Without rehearsing the evidence here in detail, we can not agree with the counsel for the appellant that the decree appealed from is not sustained by the evidence, or that it is contrary to the law and equity of the case. The great preponderance of the evidence, *viz:* the evidence of Robert Gamble and George Patten, coupled with the admissions of the defendant's answer, establishes the fact that Gamble being the owner of a military-bounty land warrant, issued under the act of Congress, approved February 11th, 1847, entitled "An

act to raise for a limited time an additional military force, and for other purposes," that was receivable at any of the United States Land Offices in full payment for the entry of one hundred and sixty acres of any land then subject to private entry, and that was assignable, turned the same over to the defendant, Lee, as his (Gamble's) property, with the request that he (Lee) should with it enter the land in controversy for the use and benefit of Gamble. Lee made the entry in his own individual name, using Gamble's warrant in making it. The defendant's answer admits that the only value the land had at the time of the entry was the timber that stood thereon, and that Gamble desired it only for the timber on it. They all agree that Gamble at once after the entry took possession of and treated the land as his own, cutting and using the timber therefrom *ad libitum*, and paid the taxes thereon, and then sold and conveyed it to Cofiled & Davis, with other lands, taking a mortgage from them upon it to secure the purchase money, which mortgage was foreclosed, and at the sale thereunder Patten became the purchaser. From the time of the entry in 1854 up to 1877, Lee laid no pretence of any claim to the land, admits that it had passed entirely out of his mind until some one else in 1877 discovered that the entry had been made in his name, and that it still stood in his name. Then it was, after the lapse of twenty-three years, that we find him for the first time asserting claim thereto. His answer, in its effort to account for his asserted ownership of the warrant with which he entered and procured the land, is highly contradictory, inconsistent, technical and evasive, and is overwhelmingly overthrown by the evidence and by all the circumstances in proof. The facts clearly establish a case of a result-

ing trust, and show that Lee has all along held the legal title to the land in trust for the use and benefit of Robert Gamble and his alienees.   It is also urged that under this land warrant Lee could not make the entry for the use and benefit of any one else but himself, that to have done so was contrary to the policy of the law, and we are cited to section 2262 of the Revised Statutes of the United States as being the provision of law whose policy would be violated by setting up such an entry to have been made for the use of any one else than the entry-man.   There is no merit in this contention.   The section of the Revised Statutes of the United States referred to has reference entirely to preemption entries of land, where the acquirement of the government's title depends upon personal occupancy and improvement of the land entered.   The entry of the land in dispute with Gamble's warrant was practically a cash purchase thereof direct from the government, unaccompanied by any requirement of personal occupancy.   Such warrants were locatable upon any goverment land anywhere that was subject to entry; they were transferrable, and in the hands of any transferee, were equivalent to the full purchase price, whatever it might be, of the number of acres called for therein.

It is also contended that the complainant is barred by laches in waiting so long before enforcing his remedy.   The case establishes clearly a fraud in law upon Gamble, out of which springs the resulting trust in his favor, and in favor of those claiming under him.  Any apparent laches in applying for the remedy, we think, is sufficiently avoided here by the principle that laches in assailing a fraud will not be imputed until the discovery of the fraud.   The defendant admits that he kept silent about the whole matter from 1854 to 1877,

and that he then began for the first time to assert himself to be the owner of the land. The patent issued to him individually was not recorded in the *local* public records until 1877, and in the meantime Gamble and his alienees go on in uninterrupted possession of the property exercising all necessary acts of ownership and dominion over the same, without suspicion of any adverse claim until the defendant, on the accidental discovery of some apparent foundation of right in himself, sets up then, in 1877, his newly discovered claim. In February, 1882, five years afterwards only, the complainant, as Gamble's successor in the trust, instituted this action. We do not think that laches is imputable to him under all the circumstances of the case.

Our conclusion is, that the decree appealed from was entirely proper, and it is hereby affirmed.