588 So.2d 663 (1991)
LIFE MARKETING OF FLORIDA, INC., et al., Appellants,
v.
A.I.G. LIFE INSURANCE COMPANY, Appellee.
No. 90-1727.
District Court of Appeal of Florida, Fifth District.
November 7, 1991.
*664 Scott L. Sterling of Law Office of Scott L. Sterling, Orlando, for appellants.
Christopher C. Coleman of Cameron, Marriott, Walsh & Hodges, Orlando, for appellee.
PER CURIAM.
The issue in this case is whether the contractual right of a creditor/principal to money held by a debtor/agent can be impaired by a dissolution award dividing the specific account in which the money was held between the agent and the agent's spouse.
The company (Appellee A.I.G. Life Insurance Company) and agent (Appellant Blankenship, an insurance agent and sole owner of Appellant Life Marketing of Florida, Inc.), entered into a general agency agreement whereby Blankenship was appointed as a general agent of the insurance company to solicit and procure applications for insurance policies to be issued by the company. The agreement provided that when commission advances were made to the general agent, these advances would be characterized as loans by the company to the agent, and an indebtedness would be created by the agent to the company repayable upon demand.
Blankenship, the general agent, appointed sub-agents who solicited insurance business on a commission basis. In 1983, the insurance company sent Ingram (a subagent working through Blankenship) an advancement on a commission on an insurance policy. The advancement contained an overpayment in the amount of $18,691.92, which Ingram remitted to Blankenship, the general agent of the company. Blankenship placed the amount in a separate account. After the money was received Blankenship sent a letter to the company characterizing the total money sent to Ingram and the amount held by Blankenship as "an advancement." The company sent a letter to its agent, Blankenship, characterizing the money as "miscellaneous non-income" and not recorded as commission. The letter stated that no further adjustments were needed from the company's end.
In a marriage dissolution action between Blankenship and his wife, the court disregarded Blankenship's protestation that he held the funds as trustee for the insurance company, considered the account in which the advancement was held to be marital property and awarded the wife a portion of the money held in the account.[1] The insurance company was not a party to *665 the dissolution action and is not bound by any judicial decision in that case. See Youngblood v. Taylor, 89 So.2d 503 (Fla. 1956); Husky Industries, Inc. v. Griffith, 422 So.2d 996 (Fla. 5th DCA 1982).
In 1988 the company made a demand for the advancement. Blankenship refused to reimburse the company, explaining that the domestic relations court had considered it a marital asset and had awarded part of it to his former wife. The company filed suit seeking repayment of the advancement. The trial court entered summary judgment in favor of the company. Blankenship appeals. We affirm.
The agency agreement created a creditor and debtor relationship between the company and the agent when "advance[s]" or "advance commission[s]" were held by the agent. Under the agreement these amounts constituted a loan by the company and created an indebtedness to the company by the agent payable on demand.
The facts show that $18,691.92 was deposited with the agent. That $18,691.92 represented advance commissions in which the company had a right to repayment upon demand. The agent and company had an ongoing relationship and therefore, the company's failure to demand immediate return of the funds is irrelevant. The duty of the agent to be faithful to his principal is inviolable and extends beyond the termination of the parties' relationship. See, Connelly v. Special Road and Bridge District No. 5, 99 Fla. 456, 126 So. 794 (1930).
The agent was indebted to the company and the agent's decision to place that money in an account which was later declared marital property and a portion given to the agent's wife does not relieve the agent of the underlying debt to the company. The creditor insurance company is in no way estopped from asserting its right to recover the indebtedness due it. Therefore, the trial court was correct in ruling as a matter of law that the agent owed the company $18,691.92.
Affirmed.
COWART and PETERSON, JJ., concur.
W. SHARP, J., dissents with opinion.
W. SHARP, Judge, dissenting.
I respectfully dissent. I would reverse because I believe the record raises material questions of fact concerning appellants' defenses of laches, estoppel, and collateral estoppel. Anderson v. Aamco Transmissions of Brevard, 265 So.2d 5 (Fla. 1972); Holl v. Talcott, 191 So.2d 40 (Fla. 1966); O'Connell v. Walt Disney World, Inc., 413 So.2d 444 (Fla. 5th DCA 1982).
The record establishes that the $18,000 deposit was made in December, 1983, and that Blankenship immediately notified A.I.G. and requested instructions on how A.I.G. wanted the funds handled. Shortly thereafter A.I.G. wrote Blankenship telling him the money was recorded as miscellaneous non-income, not commissions, and that "[n]o adjustments are necessary from this end." Prior to 1988, A.I.G. never demanded that Blankenship return the funds.
Even though A.I.G. appears to have been notified in a subsequent dissolution suit that Blankenship's wife (who worked in the business with him) was claiming that all the funds in the overage account were marital funds, A.I.G. made no claim to the $18,000. The dissolution court ruled that A.I.G. had no interest in the account, although Blankenship took the position he held the funds as trustee for A.I.G. The court ruled the account constituted marital property and it awarded one-half the funds in the overage account to Blankenship's former wife. This court affirmed that result as noted in the majority opinion.[1] Only in March of 1988, after the dissolution judgment became final, did A.I.G. demand return of the funds.
The record taken in a light most favorable to appellants, presents material questions of fact concerning their defenses and with such a record, summary judgment *666 was inappropriate. Anderson; Holl. Laches constitutes an unreasonable delay in asserting a known right which causes undue prejudice to the party against whom a claim is asserted[2] and it appears to have clear support based on the record facts in this case. Further, estoppel and collateral estoppel may also be viable as defenses, depending upon further testimony and evidence concerning A.I.G.'s knowledge of the dissolution case and its failure to assert its rights in that suit. In addition, if A.I.G. is found to have been in privity with Blankenship, due to his claimed trustee status or their agency contract, then A.I.G. may be bound by the dissolution judgment under the doctrine of collateral estoppel. See Progressive American Insurance Co. v. McKinnie, 513 So.2d 748 (Fla. 4th DCA 1987). See also Employers Casualty Co. v. Stephens, 189 Okla. 517, 118 P.2d 232, 233 (Okl. 1941). In this regard, the lower court erred in refusing to take judicial notice of the Blankenship dissolution case. § 90.203, Fla. Stat. (1989).
NOTES
[1] This court affirmed the distribution awards in Blankenship v. Blankenship, 502 So.2d 1002 (Fla. 5th DCA 1987).
[1] If the funds were found to be marital, how can they now be found to belong to A.I.G.? There is something inherently unjust in this line of reasoning.
[2] Briggs v. Estate of Geelhoed By and Through Johnson, 543 So.2d 332 (Fla. 4th DCA 1989); Appalachian, Inc. v. Olson, 468 So.2d 266 (Fla. 2d DCA), rev. denied, 482 So.2d 347 (Fla. 1985).