705 So.2d 961 (1998)
Ramabhai Sankabhai NAYEE, et al., Appellants,
v.
Jayantilal Sankabhai NAYEE, Appellee.
No. 97-192.
District Court of Appeal of Florida, Fifth District.
January 23, 1998.
Thomas R. Peppler, of Rubino, Peppler and Assoc., P.A., Maitland, for Appellants.
Raymond J. Rotella and Lawrence M. Kosto, of Kosto & Rotella, P.A., Orlando, for Appellee.
GRIFFIN, Chief Judge.
This is an appeal of a partial summary final judgment in favor of the defendant below based on the statute of limitations in an action for an accounting. Because we conclude that the claim was not time barred, we reverse.
This litigation involves a family trust which was established in 1979 for the purpose of operating a hotel in Brevard County, Florida. Title to the hotel had been taken in the name of Jayantilal S. Nayee ["Jay"], as sole trustee. In 1981, Jay sold the hotel for $563,079.77, payable under two promissory notes. The first note was for $50,000 and was payable in full within two years of December 17, 1981. The second note, in the amount of $513,079.77, was payable in monthly installments of $5,277.81 over a thirty-year period.
Plaintiffs below were three of the trust's beneficiaries. Plaintiff Ramabhai Sankabhai Nayee ["Ram"] is the defendant's brother. The two remaining plaintiffsBhupendra Ramabhai Nayee ["Bhupendra"] and Nareshkumar Hamabhai Nayee ["Naresh"]are defendant's nephews. They brought the action below against Jay for an accounting on May *962 10, 1995, alleging that Jay had failed to pay them their share of the money due from the sale of the hotel as required by the trust instrument. Jay counterclaimed for an accounting of the monies due under his father's will.[1]
On September 19, 1996, Jay filed a motion for summary judgment on plaintiffs' claim for an accounting, asserting that the action was barred by the statute of limitations. In support of his motion, Jay submitted a copy of what purported to be "minutes" of a family meeting held on July 5, 1987.[2] The meeting was attended by the plaintiffs and Jay. The minutes reflect that during the meeting Ram had questioned Jay about the failure to pay them any money from the sale of the hotel. The minutes state:
Mr. Rambhai Nayee opened up the meeting and expressed concern that note payment frommotel [sic] was not being divided so that he may receive the benefits accrued to him.
The minutes further reflect that Jay had told them that there were numerous debts to be paid before distributions could begin. Among the debts Jay detailed were the following: (1) $188,000 plus interest payable to Jay as salary; (2) $40,000 in salary owed to Bhupendra; (3) more than $70,000 to be repaid Jay for loans; (4) various loans from Central Beauty (which were not detailed); and (5) an additional $25,000 "for Mr. Mangat's debt." These debts totaled in excess of $323,000. The minutes also stated that Jay had reassured them that the trust agreement would be honored after the payment of debts. The minutes represented:
After all the above debts are satisfied or provided for then some realistic figure of nett [sic] profits shall be arrived at, which shall be distributed according to the agreement made in 1978 mid year. Mr. Jayanti [sic] Nayee said that he is willing to honor the agreement even though it should be noted that capital structure from the above had changed and promises of family help did not fully materialize fully.
Jay asserted in his motion that these minutes show that, by July of 1987, plaintiffs were aware that they were not being paid in accordance with the trust and, accordingly, they knew or should have known of Jay's alleged breach of trust.
In an affidavit submitted in support of his motion, Jay also claimed that plaintiffs had "periodically" questioned him concerning profits from the sale beginning in 1981. He said that "I consistently told them each year as I have told them throughout this case, the sale did not result in a profit." The affidavit concluded:
Notwithstanding the fact that Plaintiffs had concerns in [sic] prior to, in 1987, and thereafter, the Plaintiffs did not initiate any action for an accounting until, April 1995, more than sixteen years after the establishment of the trust, more than thirteen years after Plaintiffs first expressed a concern about Affiant's handling of the trust, more than 14 years after the motel sold, and more than eight years after Plaintiffs held a formal meeting, at which time it was discussed, that the Plaintiffs thought that Affiant was mismanaging the trust and that the Plaintiffs wanted some sort of an accounting.
After a hearing, which was not reported, the court granted Jay's motion in part, finding that the statute of limitations did apply to "issues" within plaintiffs' cause of action. However, the court held that there were issues of fact concerning the date on which plaintiffs' cause of action accrued and reserved ruling on the precise statute of limitations to be applied.
On November 18, 1996, Jay renewed his motion for summary judgment. He once again contended, based on the minutes, that plaintiffs knew or should have known by July 1987 of any discrepancies in the accounts and that the action was therefore barred by the four-year statute of limitations applicable to "[a]ny action not specifically provided for in these statutes." § 95.11(3)(p), Fla. Stat. (1995). Jay also filed a new verified copy of the minutes of the 1987 meeting, to which *963 was attached some handwritten accounting statements for the period from 1983 to 1987, which had allegedly been supplied to plaintiffs along with the minutes of the 1987 meeting. The court held a hearing on Jay's renewed motion and ultimately granted the motion, stating:
2. Based upon the minutes of the meeting from 1987, there were monies used by Defendant for his own benefit.
3. Prior to and as of the minutes of the meeting in 1987, Plaintiffs' [sic] knew or should have known there were payments being made to Defendant from the sale of the motel for which they should have received an accounting, thereby starting the statute of limitations to run.
4. Upon the foregoing findings of fact the Plaintiffs shall take nothing by their action and the Defendant shall go hence without day.
Plaintiffs have appealed this partial final summary judgment. Appellants argue that the trial court improperly dismissed their action for an accounting based on the statute of limitations because the statute of limitations for an accounting on a trust does not begin to run until there has been repudiation of the trust by the trustee or adverse possession of the trust assets by the trustee and knowledge of that fact by the beneficiaries. Further, they argue that no repudiation has taken place under the facts of this case and while they apparently concede that there was adverse possession of trust assets by the trustee, they contend that the question when they knew or should have known of Jay's adverse possession is a question of fact not appropriate for resolution in an action for summary judgment. We agree.
Jay contends that the four-year statute of limitations[3] began to run no later than July 1987, when plaintiffs questioned Jay's distribution of proceeds from the sale of the hotel. He also contends that it was apparent by July 1987 that nothing would ever be distributed to plaintiffs since the monies claimed by Jay totaled $541,267. Jay reaches this figure by adding interest at the rate of twelve percent per annum. Jay thus asserts that he had "repudiated" the trust by July 1987.
An action for an accounting was formerly cognizable both at law and in equity. Campbell v. Knight, 92 Fla. 246, 109 So. 577 (1926). Equity jurisdiction over accounts was based on three separate groundsthe complicated character of accounts, the need for discovery, and the existence of a fiduciary or trust relationship. See Armour & Co. v. Lambdin, 154 Fla. 86, 16 So.2d 805, 809-810 (Fla.1944). Where a fiduciary or trust relationship exists, an action for accounting is considered equitable in nature without regard to other considerations such as the complicated nature of the accounts. Armour, 16 So.2d at 810; Alter v. Finesmith, 214 So.2d 732 (Fla. 3d DCA 1968), cert. denied, 225 So.2d 538 (Fla.1969). Cf. Dahlawi v. Ramlawi, 644 So.2d 523, 524 (Fla. 3d DCA 1994), review denied, 652 So.2d 817 (Fla.1995). This is because proceedings involving trusts are generally within the exclusive jurisdiction of courts of equity. Walker v. Landress, 111 Fla. 356, 149 So. 545 (1933); 56 Fla. Jur.2d Trusts § 106 (1985).
As an equitable action, an action for an accounting against a trustee was historically governed by the concept of common-law laches, not by statutes of limitations. Common-law laches requires a showing of an unreasonable delay in asserting a known right which causes undue prejudice to the party against whom a claim is asserted. Life Marketing, Inc. v. A.I.G. Life Ins. Co., 588 So.2d 663 (Fla. 5th DCA 1991). Significantly, in the case of a trust, laches did not begin to run unless and until the beneficiary had actual knowledge of some unequivocal act in repudiation of the trust or actual knowledge of adverse possession by the trustee. See Dacus v. Blackwell, 90 So.2d 324 (Fla.1956); Sewell v. Sewell Properties, 159 Fla. 570, 30 So.2d 361 (Fla.1947); Smith v. Reddish, 113 Fla. 20, 151 So. 273 (1933); Fisher v. Guidy, 106 Fla. 94, 142 So. 818 (1932); Rackley v. Mathews, 141 Fla. 307, 193 So. 69 (1940); Anderson v. Northrop, 30 Fla. 612, 12 So. 318 (1892). The repudiation could be by words or by other conduct by which the trustee *964 denied the trust and claimed the property as his own, but such action had to be open and, to be effective, had to be "brought home" to the beneficiary. See Anderson, supra; G. Bogert, Trusts and Trustees, § 951 (2d ed.1962); C.T. Foster, Annotation, What Constitutes Sufficient Repudiation of Express Trust by Trustee to Cause Statute of Limitation to Run, 54 A.L.R.2d 13, 23 (1957). The Anderson court thus stated:
That in cases of continuing trusts that are strictly such, and recognized and enforced in courts of equity only, so long as the relation of trustee and cestui que trust continues to exist, no length of time will bar the cestui que trust of his rights in the subject of the trust as against the trustee, unless circumstances exist to raise a presumption from lapse of time of an extinguishment of the trust, or unless there has been an open denial or repudiation of the trust brought home to the knowledge of the cestui que trust which would require him to act as upon an asserted adverse title.
30 Fla. at 638, 12 So. at 324.
"Open denial or repudiation" is a high threshold in the case of the wrongful retention of trust funds by a continuing trustee for the reason that the possession of trust funds by the guardian is not adverse to the equitable title of the ward, but consistent with it. Fisher, 142 So. at 819. Moreover, in Florida, an action could be brought against a trustee for an accounting or breach of trust long after the trust had been terminated, if the trustee had wrongfully retained funds belonging to the beneficiary during the period of trust administration, because the funds wrongfully withheld are themselves held in trust. See, e.g., Sewell. Finally, in the case of an express trust, it is not enough that the beneficiary have knowledge of facts which would lead a reasonable person to inquire about a breach of fiduciary duty, although the latter is generally sufficient with respect to other fiduciary relationships. Rather, the beneficiary was required to have actual knowledge of the facts later complained of. In Sewell, the court reasoned:
[T]rust estates are definitely the wards of equity and equity delights in protecting the trust and in requiring the trustee to render true and honest accounting to his cestui. See Goldring v. Herskovitz, 126 Fla. 804, 172 So. 239; Safford v. McCaskill, Fla., 157 Fla. 133, 25 So.2d 210..... Where the trustee by fraud or deception, or even by keeping quiet when he should speak and account to his cestui, causes the cestui to be ignorant of the rights of the cestui and of the duties of the trustee, laches will not be imputed to the cestui until discovery of the true condition. Lee v. Patten, 34 Fla. 149, 15 So. 775; Walker v. Landress, 111 Fla. 356, 149 So. 545; Smith v. Reddish, 113 Fla. 20, 151 So. 273, 274; Fort Pierce Bank & Trust Co. v. Sewall, 113 Fla. 811, 152 So. 617.
159 Fla. at 573, 30 So.2d at 362.
Prior to 1974, and consistent with the viewpoint that an action against a trustee for an accounting was an equitable action not subject to the statute of limitations, Florida's chapter on statutes of limitations contained an express provision exempting such claims against a trustee from its operation. The statute provided:
This chapter shall not apply ... with respect to any money or property held or collected by any officer or trustee or his sureties.
§ 95.02, Fla. Stat. (1973). This statutory bar was eliminated in 1974, when the legislature made sweeping revisions to section 95.11. See Ch. 74-382, § 7, Laws of Florida. No specific provisions regarding an accounting or breach of fiduciary duty were added to the limitations statute; however, at the same time it amended section 95.11, the legislature also added section 737.307 to the chapter on trusts. See Ch. 74-106, § 1, Laws of Florida. The section contains a period of limitations for actions brought against trustees where an accounting has been rendered. This statute currently provides:
737.307. Limitations on proceedings against trustees after beneficiary receives account.
Unless previously barred by adjudication, consent, or limitations, an action against a trustee for breach of trust is barred for any beneficiary who has received a final, annual, or periodic account *965 or other statement fully disclosing the matter unless a proceeding to assert the claim is commenced within 6 months after receipt of the final, annual, or periodic account or statement. In any event, and notwithstanding lack of full disclosure, all claims against a trustee who has issued a final account or statement received by the beneficiary and has informed the beneficiary of the location and availability of records for his examination are barred as provided in chapter 95. A beneficiary has received a final, annual, or periodic account or statement if, being an adult, it is received by the beneficiary or if, being a minor, disabled person, or person who may take by virtue of the exercise or nonexercise of a power of appointment, it is received by the beneficiary's representative as described in s. 731.303.
§ 737.307, Fla. Stat. (1995).
The parties in this case have not referenced section 737.307. The statute, in any event, would not support the lower court's order. The only "accountings" shown by the record are Jay's informal identification of certain of the debts to be paid at the meeting in July 1987, together with the handwritten accounts attached to the minutes. These informal statements did not include the most basic accounting information. The statements attached to the minutes show a list of what appear to be payments to various persons and entities, such as the IRS and Central Beauty, but no explanation for any of the payments was offered.
The record also fails to conclusively demonstrate actual knowledge by the appellants of Jay's alleged adverse possession of trust assets. Jay's contention that the statute began to run no later than July 1987, when plaintiffs questioned Jay's distribution of proceeds from the sale of the hotel, is belied by the minutes themselves, in which he expressly affirmed the continuing existence of the trust. The minutes represented:
After all the above debts are satisfied or provided for then some realistic figure of nett [sic] profits shall be arrived at, which shall be distributed according to the agreement made in 1978 mid year. Mr. Jayanti [sic] Nayee said that he is willing to honor the agreement even though it should be noted that capital structure from the above had changed and promises of family help did not fully materialize fully.
Additionally, Jay claimed that he was a creditor of the trust, and so had a valid claim against the funds held by the trust. As such, his claim to trust funds was not in repudiation of the trust, but was in fulfillment of the trust's legal obligations. Also of some significance is the fact that Jay has reached the $500,000 figure only in retrospect, by now adding interest to the debts identified in the minutes. His claim of $300,000 in debts "plus interest" is not the equivalent of a statement that no monies would be forthcoming. Indeed, even if Jay had claimed debts totaling in excess of $500,000 in 1987, this might not be determinative of plaintiffs' right to a distribution, since the payoff of a 30-year mortgage on $500,000 would likely exceed Jay's claim.
While the evidence does show that plaintiffs were not paid any monies from 1981 through 1995, this was not inconsistent with what they had previously been told by their trusteethat debts must be paid before any proceeds from the thirty-year note and mortgage could be distributed. As the lower court noted, plaintiffs were aware that no accounting had been rendered upon request, and that Jay had failed to render the yearly accounting required by the Florida Statutes. See § 737.303, Fla. State. (1995). Knowledge that no accounting had been rendered, however, is knowledge only of a breach of trust, and not of any repudiation or adverse possession of trust assets. Accordingly, we reverse the summary final judgment and remand for further proceedings.
REVERSED and REMANDED.
W. SHARP, J., concurs.
DAUKSCH, J., concurs in result only.
NOTES
[1] The elder Mr. Nayee apparently died in 1977.
[2] Plaintiffs had apparently produced the minutes at defendant's deposition and used them to question defendant.
[3] § 95.11(3)(p), Fla. Stat. (1995).