ST. ELMO MASSENGALE, *Appellant*, v. FRANCIS J. O'HARA, *Appellee.*

1. Where the allegations do not show such a course of dealing or state of affairs between parties as require an accounting in

equity, the bill of complaint must stand if at all on some other equitable ground.

2.   Where fraud is not alleged and a trust is not sought to be impressed upon specific property and the remedy at law is adequate, a suit in equity on an alleged obligation not essentially equitable in its nature cannot be maintained.

Appealed from the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*J. W. Holland* and *R. C. Merritt,* for Appellant;

*P. H. Odom,* for Appellee.

WHITFIELD, C. J.—St. Elmo Massengale filed a bill of complaint against Francis J. O'Hara, in which it is in effect alleged that on March 15th, 1909, Helen P. Walters and Robert P. Walters, respectively executrix and executor of the last will and testament of W. T. Walters, deceased, by deed granted to said O'Hara the exclusive right and option to buy or sell on or before March 15th, 1910, for two dollars per acre, the whole or parts not less than 40 acres each, of certain 4,600 acres of land, the recited consideration for the option being one dollar; that subsequently, in March, 1909, said O'Hara for a recited consideration of $10.00 granted to Alfred H. S. Talbot, the exclusive right to buy or sell said lands or parts thereof not less than one acre each, on or before March 15, 1910, for $5.00 per acre; that subsequently, in July, 1909, said Talbot in a certain writing agreed with Massengale that whereas Talbot then had control of 4,000 acres of said lands, Massengale was to advertise them at his own

expense, and as the lands are sold the proceeds in excess of $5.00 an acre were to be applied to reimburse Massengale for expenses in advertising, the balance to be equally divided between Talbot and Massengale; that under said contract Massengale was only to advertise the lands at his own expense, but not to make sales of the lands; that O'Hara had notice of this contract and of its terms; that in the execution of his undertaking and agreement Massengale advertised the lands at an expense of $1,500.00; that O'Hara had notice thereof; that subsequently, in November, 1909, Massengale became suspicious of Talbot and then explained to O'Hara at length and in detail his transactions with Talbot and the acts of Massengale connected therewith, particularly his advertising of said lands, and the cost thereof, borne by himself, and stated and explained to O'Hara his fears that he thought the conduct of Talbot "not only would fail to make his proper profits out of said land sale enterprise, but would lose entirely the money already paid out in advertising said lands;" that Massengale then and there stated to O'Hara that he contemplated stopping and discontinuing said advertising and refusing to go to further expense therein because of his said fears that he would be subjected to loss by or through the conduct of Talbot, and that if so damaged he would be remediless; that said O'Hara then and there requested Massengale "not to abandon and discontinue said advertising, but to continue same, and said O'Hara promised, in consideration of your orator's undertaking to continue said advertising, vigilantly to watch over the interest of your orator, and, as far as was in his, O'Hara's power, to prevent said Talbot from defrauding your orator or defeating the rights of your orator in said option held by him, said Talbot, by any act or acts of him, the said Talbot, said O'Hara had a substantial

reason to hope that benefits and profits would the more certainly accrue to him by reason of your orator's continuing said advertising, as he, said O'Hara, requested and urged.

VIII.   And your orator having great faith in the reputation of said O'Hara for intergrity and business probity and respectability, and in consideration of the premises made by said O'Hara vigilantly to watch over the interests of your orator, as aforesaid, entered into and signed a second written agreement with said Talbot, ——
——, said second agreement being dated the 9th day of December, A. D. 1909, and providing that your orator was to spend at least two hundred and fifty ($250) dollars, net, in further advertising four thousand (4,000) acres of said lands, and that your orator was to have one-half of the proceeds of all sales of said lands, or parts thereof, over and above five ($5) dollars an acre, whether such sales should be made by reason of said advertising or otherwise, and your orator avers that he executed promptly and fully all his undertakings made in the said second contract with the said Talbot by further advertising said lands as provided in said contract and in the manner hereinbefore described, which caused a further expense and outlay by your orator of a large sum of money, to-wit, five hundred ($500) dollars.   Said O'Hara had notice both of the making of said second contract between your orator and Talbot, and of the terms thereof, and had notice also of your orator's fulfillment of all of his, your orator's, obligations and undertakings therein and thereunder.

IX.   Said Talbot in and under his said option from said O'Hara had the exclusive right and option to buy or sell the entire tract of the Kalamazoo Farm Lands, forty-six hundred (4,600) acres as aforesaid, and your orator

having contracted with said Talbot only in respect to four thousand (4,000) acres of said lands, this left the said Talbot an option on six hundred (600) acres of said lands in which your orator was not interested and had no rights. Said Talbot on days and dates unknown to your orator sold or contracted to sell to some person or persons unknown to your orator a portion of the said six hundred (600) acres, to-wit, two hundred (200) acres of said lands. As said Talbot never made any report to your orator of said sales, your orator infers that he, the said Talbot, never deemed said sales to have been made out of that portion of the entire tract with respect to which your orator had contracted. The said sales by said Talbot left a total of forty-four hundred (4,400) acres of said lands unsold, all of which was covered by the said option granted by said O'Hara to said Talbot and included the four thousand (4,000) acres with respect to which your orator had contracted with said Talbot, and in the said option to buy or sell which your orator had acquired an interest and equity.

X. Your orator avers further that, subsequently, to the said sale or sales of two hundred (200) acres by said Talbot and subsequently to the execution of your orator's said second contract with Talbot, but prior to the 15th day of March, A. D. 1910, the said O'Hara induced said Talbot to release and assign to him the said option to buy or sell the remaining forty-four hundred (4,400) acres of said lands. Your orator is informed and believes that the consideration for said release was five hundred ($500) dollars in money paid by said O'Hara to said Talbot and warranty deeds, executed by the said O'Hara without further consideration, conveying to said Talbot, or his nominees, title to the two hundred (200) acres of said lands which said Talbot already had sold or contracted

to sell. Your orator avers that he had no notice whatsoever, either from said Talbot, said O'Hara or any other person, that said release or assignment, or any other release or assignments, or any other thing that might effect his, your orator's rights, was even contemplated by said Talbot or O'Hara and the said release and assignment of the said option was without your orator's knowledge or consent.

XI. Your orator says further that, at the time the said Talbot released or assigned the said·option, the Florida Land Company, a Minnesota corporation, was then and there a prospective purchaser of the forty-four hundred (4,400) acres of said lands, then unsold by said Talbot. The said company, your orator now states to the court, became interested in said lands either through one or more of the advertisements thereof, which your orator caused to be published as aforesaid, or through the personal solicitation of said Talbot or through both said agencies. Being so interested, said company did purchase the said unsold portion of said lands, and the said O'Hara and his wife, Marjaret J. O'Hara, executed a warranty deed conveying the said forty-four hundred (4,400) acres to the said company, the said deed bearing date the 15th day of March, A. D. 1910, that being the last day of the period covered by the option granted by said O'Hara to said Talbot and released as aforesaid, by said Talbot, that being the same option in which your orator was interested and had equities, as aforesaid, your orator says further that the consideration named in the said deed was as follows, to-wit: 'Ten (10) Dollars, lawful money of the United States of America, and other valuable considerations.' But your orator is informed and believes that the actual price paid or contracted to be paid for

said lands by said company was sixteen ($16) dollars an acre, or a total of sixty-four thousand ($64,000) dollars.

XII.   Your orator did not learn of said deed until some time after the execution thereof, and then only by chance, but when word of the same did reach him, he promptly made demand upon both said O'Hara and said Talbot for his, your orator's portion of the sale price of the said lands calculated awarding to the terms of your orator's said two contracts with said Talbot. But, instead of receiving the sum to which he was entitled your orator was then informed for the first time of the said release or assignment of the said option by said Talbot; and said Talbot, and said O'Hara both then and there pretended that, because of the said release, your orator was not entitled to any part whatever of the moneys arising from the sales of any parts of the said Kalamazoo Farm Lands.

XIII.   But your orator avers, that, in accepting a release or assignment of said option from said Talbot without notice to and without the knowledge of your orator, the said O'Hara took said release or assignment, subject to all the rights and equities of your orator in said option, this more particularly because of the notice and knowledge said O'Hara had of your orator's contractual rights with respect to said option and the moneys your orator had expended in the faith thereof and because of the promises made to your orator by said O'Hara. And your orator avers that said O'Hara, in equity and good conscience, must be held and deemed to be your orator's trustee, and to hold as such that portion of whatever part of the purchase price of said lands has been already paid by said company as would have been so held by said Talbot, had he, the said Talbot, instead of releasing or assigning his interest in said option made the sale of said lands to said company. And your orator avers further

that he, your orator, will be entitled to a share similarly computed and calculated, in the portion of the purchase price of said lands yet unpaid by said company, if said lands have not now been paid for in full.    And your orator avers that his share in any money in excess of five ($5) dollars an acre, which has arisen or may arise from the sale of said lands by said O'Hara to the said Florida Land Company, should be computed and calculated as follows, to-wit, your orator is entitled, first; to a sum sufficient to reimburse him for advertising said lands as aforesaid, and, second, to one-half of whatever balance remains."

The prayer is for an accounting and the payment of any sums that may be found due by reason of the premises and for general relief.

The following demurrer was interposed to the bill:

"1st.    There is no equity in said bill.

2nd.    There is no privity between the complainant and defendant.

3rd.    It does not appear in said bill that any contract relation existed between the complainant and the defendant.

4th.    It appears in and by said bill that if anyone is liable to the complainant on account of the alleged transaction the said Alfred H. S. Talbot is liable and not the defendant.

5th.    It does not appear in said bill that the defendant agreed to pay or to insure the payment of any money or any other thing of value to the complainant.

6th.    It does not appear from the bill that the defendant was guilty of any fraud or was responsible for the contract between the said Talbot and the complainant.

7th.    It is not alleged in the bill that the defendant

agreed in writing to pay any debts or obligations from the said Talbot to the complainant."

This demurrer was sustained, and the plaintiff appealed.

As the allegations do not show such a course of dealing or state of affairs between the parties as requires an accounting in equity, the bill of complaint must stand if at all upon some other equitable ground. See Dorman v. McDonald, 47 Fla. 252, 36 South. Rep. 52.

It is contended that a trust relation between the parties is shown by the bill. There is no claim that the bill discloses actual or constructive fraud on the part of the defendant, O'Hara, therefore support for the bill must be found on some other theory maintainable on the allegations, or the order sustaining the demurrer should be affirmed. A consideration of the pertinent allegations will be made in determining whether they are sufficient to show some inequitable conduct on the part of the defendant that will justify the relief sought.

No property is brought into court as the subject of a trust relation between the parties. If the conduct of the parties towards each other created a relation of debtor and creditor there is apparently adequate remedy at law. While the demurrer admits the allegations that O'Hara knew of the agreements existing between Talbot and Massengale, the only allegation of an obligation assumed by O'Hara growing out of his knowledge of the agreements is that in consideration of a continuance by Massengale of his advertising the land, O'Hara promised "vigilantly to watch over the interests of" Massengale, and, as far as was in his, O'Hara's, power, to prevent said Talbot from defrauding Massengale or defeating his rights in the option held by Talbot, by any acts of said Talbot. There is no allegation that O'Hara failed to perform his promise "vigilantly to watch over the interests of" Mas-

sengale "and as far as was in his power to prevent" Talbot from defrauding Massengale or defeating Massengale's rights in Talbot's option.    The contention is that as O'Hara, with knowledge of the agreement between Talbot and Massengale, induced Talbot for a consideration to release and assign to him the option Talbot had from O'Hara to buy or sell the lands, after O'Hara had promised Massengale to vigilantly watch over his interests and as far as in his power to prevent Talbot from defrauding Massengale in his rights in Talbot's option, that a trust relation arose between O'Hara and Massengale, by reason of which O'Hara should be held to account to Massengale according to Massengale's agreement with Talbot for profits arising from the sale of the lands to persons who "became interested in said lands either through one or more of the advertisements thereof which Massengale caused to be published as aforesaid, or through the personal solicitation of said Talbot, or through both of said agencies."

Even if O'Hara's promise to Massengale to vigilantly watch over his interests and as far as in his power to prevent Talbot from defrauding Massengale, can be regarded as a binding obligation to carry out Talbot's contract with Massengale, and such obligation has been violated, the courts of law can afford adequate and full redress, there being no complicated accounts to adjust that cannot be readily determined in an action at law.    No trust relation with reference to any specific property is made to appear.

Under his contract with Talbot, Massengale apparently acquired a right to share in the profits derived from a sale of the lands, but no right in the lands as such or in the title that passed to a purchaser.    The allegations

of the bill of complaint do not disclose a substantial basis for the equitable relief prayed.

As no ground of equity cognizance is apparent on the pleadings, if Massengale has any substantial legal right of recover from O'Hara, the common law remedies will afford ample redress.

The order appealed from is affirmed.

TAYLOR, SHACKLEFORD, COCKRELL and HOCKER, J. J., concur.