**ARMOUR & COMPANY, a corporation, v. J. CARL LAMBDIN**

16 So. (2nd) 805                                 January Term, 1944
February 18, 1944                              Special Division B
Rehearing Denied March 7, 1944

Alfred P. Marshall, for appellant.

J. Carl Lambdin, in proper person, for appellee.

WELCH, Circuit Judge:

This appeal brings here for review two orders of the lower court, one dated July 10, 1943, dismissing plaintiff's original bill of complaint, with leave to amend; the other dated October 28, 1943, dismissing plaintiff's amended bill of complaint and the amendment thereto.

On February 15, 1943, plaintiff filed its bill of complaint for an accounting, wherein it was alleged that the defendant, purporting to act as attorney for plaintiff's assignor, did, on February 8, 1938, procure an execution on a judgment entered July 15, 1930, which had been assigned to plaintiff on April 1, 1937, which assignment had not been filed for record until October 9, 1940 and delivered such execution to the

Sheriff of Pinellas County, who made a levy and sale thereunder, receiving therefrom Fifteen Hundred Dollars ($1,500.00) and transferring to defendant, as attorney for plaintiff's assignor, Armour Fertilizer Works, the net sum of Fourteen Hundred, Thirteen and 75/100 Dollars ($1,413.75) and taking the defendant's receipt for said sum on April 4, 1938. Plaintiff alleged that it had many times demanded an accounting from the defendant but that the defendant had refused to account, or pay. That having received this money in the capacity as an attorney and a fiduciary, the same was held by him in trust for the rightful owner, who is the plaintiff, and that such rightful owner is now entitled in a court of equity to an accounting, to determine the portion of said money rightfully belonging to the plaintiff. Motion was made to dismiss the bill, and on July 10, 1943, the lower court entered the following order:

"The above cause coming on to be heard upon motion to dismiss the bill of complaint, arguments and briefs submitted by the respective parties, and upon careful consideration thereof, the Court is of the opinion that the motion to dismiss the bill should be granted, for the following reasons, to-wit:

"First: The allegations of the bill of complaint in the instant case, show clearly that the account is not complicated, that the amount claimed is fixed, definite and certain, being exactly, to-wit: the sum of $1413.75; that there is no need of discovery; that there is no charge of mis-management or misappropriation of trust funds; that the pertinent allegations do not show such a course of dealing or state of affairs between the parties as to require an accounting in equity. (See Frierson v. Frierson, 149 So. 18, 110 Fla. 416, Massengale v. O'Hara, 58 So. 42, 63 Fla. 521, 1 C.J.S. (Title Accounting) Section 18, page 564; Rickman v. Whitehurst, 74 So. 205, 73 Fla. 152.

"Second: The bill of complaint does not show the relationship of attorney and client between this plaintiff and the defendant. Defendant at most is shown to have been a self-appointed attorney or agent for this plaintiff's assignor. The language of the bill (i.e. paragraphs 1 and 3), "The defendant purporting to act as attorney for plaintiff's assignor" infer-

entially suggests that this plaintiff is not recognizing the relationship of attorney and client even as between plaintiff's assignor and defendant. Yet in paragraph 5 of the bill the plaintiff alleges, "The fund so received by the defendant received by him in the capacity of an attorney at law and a fiduciary . . . ", which, again inferentially, suggests that the relationship of attorney and client did exist between this plaintiff's assignor and the defendant and that such relationship carries over as between this plaintiff and the defendant. In other words, the plaintiff on the subject of the relationship of attorney and client suggestively and inferentially both approbates and reprobates even with reference to such subject matter in connection with the plaintiff's assignor and defendant, but does not clearly and definitely do either. If there were a clear showing of the relationship of attorney and client between this plaintiff and defendant, the trust, which might then exist, would be in the opinion of this Court what might be called a naked trust. The mere existence of such a trust and such a relationship as is disclosed by this bill does not of itself give the right to an accounting from the one who might be termed a trustee to a cestui que trust. If a cestui que trust knows to the penny how much is due from the character of the one attempted to be shown here, and the amount is fixed, definite and certain as is alleged in the bill, he can sue for that amount at law and has there in that forum an adequate remedy. Under these circumstances there is no need, absent as here any allegations of special, unusual or particular reasons, for the interposition of a court of equity.

"Moreover, the bill of complaint does not attempt to trace trust funds or assets nor in any other manner, which this Court can envisage, does it set up any justiciable controversy proper to be determined by a court of equity. It is appropriate to observe in connection with the subject of the allegations of the bill with reference to a trust or fiduciary relationship that there is no charge that the defendant ever knew of the assignment from the original judgment creditor to the plaintiff herein, and therefore it is at least questionable that the plaintiff can claim the relationship of attorney

and client between itself and the defendant. No attorney is compelled to accept every client who presents himself at his office. It is conceivable that the defendant, who was at the time of the transactions set forth in the bill of complaint an attorney at law, might have accepted as a client Armour Fertilizer Works, a corporation, and for some reason not have accepted this plaintiff as a client. There is no question that when the assignment was made that all of the legal rights of the assignor were conveyed to the assignee, but there is a question as to whether or not all equitable rights were by virtue of the assignment transferred to this plaintiff. It would seem that the relationship of attorney and client might be created only by the employment of the attorney on the part of the client and the acceptance of such employment by the attorney. There is no showing in the bill of any such employment or acceptance of employment as between this plaintiff and the defendant, and, as aforesaid, there is no direct allegation of such contract or agreement between this plaintiff's assignor and this defendant. The lack of knowledge on the part of the defendant of the assignment seems to preclude the possibility of the relationship of attorney and client existing between the plaintiff and defendant though grantedly this would not necessarily negative a simple or naked trust. The plaintiff does not allege that the defendant has failed or refused to account or pay the monies over to the plaintiff's assignor.

"Third: the defendant raises a very interesting question in his motion to dismiss. The question presented is whether or not in a motion to dismiss a bill in equity the defendant may in and by said motion raise laches by virtue of the bill of complaint showing on its face that the three year statute of limitations has run and therefore would be available as a defense or bar to the action if it had been instituted on the law side of the court. It must be borne in mind that the plaintiff's bill does not use this situation as a predicate for equitable relief but an inspection of the bill does disclose that more than three years have elapsed since the right in this plaintiff's asignor to bring an action against the defendant accrued. In this connection it will be noted, however, that

the bill fails to allege upon what date the plaintiff became cognizant of the acts of the defendant nor does it allege upon what date the right of action, if any, accrued to the plaintiff. Furthermore, the bill does not attempt to allege that an action at law has ever been instituted against the defendant and that the defendant in such action filed a plea of the statute of limitations.

"It is the view of this court that the statute of limitations is in the nature of a plea of privilege and that it cannot be presumed that the defendant would have elected to have filed such a plea had an action at law been instituted against him. Such a plea on the law side of the court is an affirmative defense or bar as well as being one of privilege which may or may not be used at the option of the defendant. This court deems it unnecessary to determine the question hereinbefore set forth but is inclined toward the view that laches predicated upon the statute of limitations might be raised in a motion to dismiss where the passage of time designated in such statute as a bar appears affirmatively on the face of the bill and assuming that no equitable basis for the tolling of the statute is made to appear. If it were permissible and proper for this question to be raised by a motion to dismiss as was attempted in this cause, it would be appropriate for the court to consider the contention of the defendant to the effect that since the plaintiff's bill discloses that the alleged cause of action is not based upon a written agreement of contract but springs from the duty of restitution raised by the facts which show that the money was obtained under circumstances constituting an unjust enrichment and creating a naked trust, that the action is barred by the three year statute of limitations of laches predicated thereupon. As aforestated this court does not deem it necessary to pass upon this question but merely sets forth in order that counsel for the plaintiff and the defendant may know that such question was not ignored nor overlooked and in order that the question in the event of an appeal may be passed upon by the honorable Supreme Court of Florida if that tribunal should deem it necessary.

The defendant cites as authority for his contention on

this point the following cases: Ball v. Roney, 112 Fla. 186, 150 So. 240, Nuveen v. Quincy, 115 Fla. 510, 156 So. 153; Yates v. Ball, 181 So. 431; and Webb v. Powell, 87 Fed. (2nd) 983, and the Florida decisions therein referred to.

Upon an independent investigation the court has found the case of Browder v. Da Costa, 109 So. 448. This case is helpful upon the question of whether or not the statute of limitations is applicable herein or would run as distinguished from the question as to whether or not the running of the statute of limitations or laches predicated thereupon may be raised in a motion to dismiss. It will be noted that the bill of complaint in the instant case fails to allege any facts or circumstances sufficient to constitute the defendant Lambdin the agent or voluntary trustee of the plaintiff, Armour and Company, a Delaware Corporation.

It Is Therefore Ordered, Adjudged and Decreed that the said bill of complaint be and the same is dismissed with leave to the plaintiff to amend within fifteen days if it so desires.

Done And Ordered at Chambers, in St. Petersburg, Pinellas County, Florida, this 10th day of July, A.D. 1943.

"T. Frank Hobson

"Circuit Judge."

On July 17, 1943, plaintiff filed an amended bill, the averments of which are similar to the original bill, except that in the amended bill, paragraph 1, it is alleged, as follows:

"On or about February 4, 1938, the defendant, *as Attorney for* plaintiff's assignor, Armour Fertilizer Works, a corporation, procured from the clerk of the Circuit Court of Lee County, Florida, an execution upon judgment, which had, on July 15, 1930, been entered in favor of Armour Fertilizer Works, a corporation, plaintiff, against R. M. Marshall and Minnie Alice Marshall, a free dealer, defendants, a true copy of which said final judgment is hereunto attached, marked Exhibit "A." And in paragraph 5 of the amended bill it is alleged:

"The plaintiff herein, on December 24, 1942, instituted a suit at law in the Circuit Court for the Sixth Judicial Circuit the State of Florida in and for Pinellas County, Florida,

being Law No. 10,309. Defendant filed a demurrer to plaintiff's declaration therein pleading as a ground therefor the three year Statute of limitations as set forth in Section 4663 (5) C.G.L. 1927, which said demurrer was upon hearing before the Honorable John U. Bird, a Judge of said Court, sustained and the said law suit dismissed on February 16, 1943, wherefore this plaintiff is without remedy save in a court of equity."

Defendant moved to dismiss the Amended Bill, assigning as grounds therefor the same grounds contained in the Motion to Dismiss the original bill, and five additional grounds. The plaintiff, then, by leave of the Court, filed its amended paragraph 7 to its amended bill of complaint, in words and figures, to wit:

"Your plaintiff and plaintiff's assignor, Armour Fertilizer Works, a corporation, have each many times demanded from the defendant an accounting of the funds received by him in its behalf from the Sheriff of Pinellas County, Florida, as hereinbefore set forth, urging that payment be made to it of the said sum of Fourteen Hundred, Thirteen and 75/100 dollars ($1413.75), or whatever portion thereof either of them might be justly entitled to receive upon the making of such accounting, but that defendant has refused and does now refuse to so account, or pay."

The motion to dismiss the amended bill was visited upon the amended seventh paragraph also, and on October 28, 1943, the lower court made and entered its order, as follows:

(Title Omitted)

"The Court is of the opinion that the relationship of attorney and client, which generally is held to be a fiduciary relationship, which allegedly existed at one time between plaintiff's assignor and the defendant herein, was not an assignable incident of the judgment. The fiduciary relationship which exists between attorney and client is deemed by this Court to be personal in character as to be unassignable. Particularly is this true where there is no allegation showing any knowledge on the part of the attorney of the assignment or attempt or intention to create such relationship as between assignee and said attorney.

"For the reasons herein stated and for some of the others which have heretofore been stated by the Court in an order entered in this cause under date of July 10, 1943, and recorded in *seal* record 197 on page 329 in the office of the clerk of this Court the Court finds that the bill does not contain equity and should be dismissed.

It Is Therefore Ordered, Adjudged and Decreed That the motion to dismiss the amended bill of complaint and the amendment thereto be, and the same is hereby granted.

It Is Further Ordered, Adjudged and Decreed That since counsel for the plaintiff in open court states that he does not care to further amend, no time for such amendment be allowed.

Done and Ordered at Chambers, in St. Petersburg, Pinellas County, Florida, this 28th day of October, A. D. 1943.

"T. Frank Hobson
_____

"Circuit Judge."

Appellant poses eight questions and the appellee one question for determination by this Court on this appeal, but in view of the conclusions reached by the writer it is deemed unnecessary to detail the questions posed or to go into any categorical discussion of them. It is the view of this writer that a determination of this cause must be founded upon the principles of law governing the *election of remedies*. This term has been defined by the text writers as the right to choose, or the act of choosing between different actions or remedies, where the plaintiff has suffered one species of wrong from the act complained of. As the choice by a party to an action of one of two or more co-existing remedial rights, where several such rights arise out of the same facts; but the term has been generally limited to a choice by a party between inconsistent remedial rights, the assertion of one being necessarily repugnant to, or a repudiation of, the other. Thus in its more restricted sense, election of remedies is the adoption of one of two or more co-existing remedies, with the effect of precluding a resort to the other. (28 C.J.S., Election of Remedies No. 1). The same text also states that the doctrine of election of remedies is based upon the rule

that a party cannot, either in the course of litigation or in dealings in pais, occupy inconsistent positions; in other words a man shall not be allowed to approbate and reprobate. At common law it was the rule to allow only one remedy for one wrong, although several different remedies were provided. On page five of the same text it is stated that,

"Election between different remedial rights arising out of the same facts may be made, although one of these rights is legal in its nature and the other equitable." Also, "Whenever the law supplies a person with two or more remedies for the redress of a given wrong or the enforcement of a given right, and these remedies are based upon inconsistent *theories,* however these remedies differ either in the form or the forum of procedure or in the personality of the parties to the several proceedings, such person is put to his election. In other words, a suitor is not permitted to invoke the aid of the courts upon *contradictory principles or theories* based upon one and the same set of facts. The doctrine of election is not restricted to any class of remedies." (Underscoring mine).

The writer is of the opinion that in the inception of this controversy plaintiff's assignor, Armour Fertilizer Works, has a right of action against the defendant, an attorney at law, that it could have chosen to treat as an obligation to pay under an implied contract and have maintained an action at law in assumpsit for money had and received. The text writers and reported cases generally agree that an action to compel an Attorney to pay over money allegedly collected by him for his client rests in contract and is usually enforced by the common law action of assumpsit. 5 Am. Juris. p. 340. Cameron v. Clarke, 11 Ala. 259. Thornton on Attorneys at Law, volume 1, p. 559. Pfau v. Fullenwider, 102 Ill. Appeals 499. Ferree v. United Storage Co. 75 Atl. 838, and Crothers v. Lee, 29 Ala. 337. Or it could have chosen to have treated the money collected by Lambdin as the corpus of a trust, because of the fiduciary relationship existing between attorney and client, and upon a proper bill with appropriate allegations, maintained a suit in equity to trace, segregate and obtain possession of, the thing itself, that is, the identical

money delivered by the sheriff to Lambdin, as an attorney at law. Or it could have maintained a suit in equity for accounting.

1 Ency. Pl. & Pr., 93, it is stated:

'The basis and extent of the equitable jurisdiction over matters of account appears to have been seldom considered in the American Courts but it is often discussed in the English authorities. The best considered authorities put the equitable jurisdiction upon three grounds, to wit; the complicated character of accounts; the need of a discovery and the existence of a fiduciary or trust relationship."

And on page 96 of the same text it is stated:

"And it may be said generally that whenever there is a fiduciary relationship such as that of trustee, agent, executor, etc., the right to an accounting in equity is undoubted. The right in such cases is based upon the substantive equity of trusts, which jurisdiction equity always has."

This Court seems to have adopted these principles in the case of Royal Indemnity Co. v. Knott, 101 Fla. 1495, 136 So. 474. And in the case of Singleton v. Knott, 101 Fla. 1077, 133 So. 71, this Court said:

"Courts of equity have jurisdiction of all trusts for the purpose of compelling an accounting, and the existence of any confidential or fiduciary relation is sufficient to invoke such jurisdiction whenever the duties arising out of such relations rest upon one of the parties to render an accounting to the other."

1 Corpus Juris Secundum, page 655, paragraph 19, it is stated, "Equity has jurisdiction of an accounting where a fiduciary relation exists as to money or property; an accounting is necessary to determine the amount due even though the accounts are not mutual, or complicated, and no discovery is sought and there is a concurrent remedy at law; but a bare agency is insufficient to confer jurisdiction."

The principles of law defining the relationship between attorney and client as that of a trust, or confidential relationship, is too well established to warrant the citation of authority.

The writer is of the opinion that these remedies were also available to the plaintiff, as assignee of the judgment in question. While I agree with the chancellor that the relationship of attorney and client is not an assignable incident of a judgment, it is my opinion that the fruits of such relationship (money, property, or thing of value) are. For instance 'A' has a judgment against 'B'; he employs an attorney to enforce collection of his judgment; he then assigns his judgment to 'C'; by no stretch of the imagination could it be said that 'A' had assigned the services of his attorney to enforce the judgment. But if the attorney employed by 'A' proceeds to collect the judgment and reduce the fruits of the judgment, such as money, property, or other thing of value, to his posession, then, it is my view that the assignee would have all of the rights and remedies *as against* the attorney that the assignor had in the first place.

In Feinberg v. Stearns, 56 Fla. 279, 47 So. 797, this Court said:

"It is further well settled that the assignment of a judgment necessarily carries with it the cause of action on which it is based, together with all the beneficial interest of the assignor in the judgment, and all its incidents. 2 Freeman on Judgments (4th Ed.) Sec. 431, and authorities cited. Such as assignment entitles the assignee to use every remedy, lien, or security available to the assignor as a means of enforcing the judgment. Chilstrom v. Eppinger, 127 Cal. 326, 59 Pac. 696, 78 Am. St. Rep. 46, and cases cited in note on page 49; Schileman v. Bowlin, 36 Minn. 198, 30 N.W. 879."

We now come to consider the question, 'Are the remedies hereinbefore mentioned inconsistent?' I think they are. If plaintiff chose to go into the law court it must have assumed and taken the position, that the relationship existing between it and the defendant, Lambdin, was that of debtor and creditor and that Lambdin owed it a sum of money to be recovered in assumpsit on an implied contract to pay. If, on the other hand, plaintiff had chosen to go into a court of equity it would have had to assume, and take the position, that the relationship existing between it and the defendant, Lambdin, was that of trustee and cestui que trust, and in my opinion

for the plaintiff to say in the law court that the relationship, is that of debtor and creditor and in the equity court to say that the relationship, growing out of the identical state of facts, is that of trustee and cestui que trust, is inconsistent.

We now consider whether or not the plaintiff made an election.

"In 20 C.J. p. 19, in discussing what constitutes an election between remedies the author says:

"The authorities are by no means harmonious as to what acts constitute a conclusion election. But subject to the exceptions as to what constitutes a valid and final election, and the conflicting rules relative to the effect of commencing an action, it may be stated as a general rule that any decisive act of a party, with knowledge of his rights and of the facts, indicating an intent to pursue one remedy rather than the other, determines his election in case of conflicting and inconsistent remedies. To the proper application of this rule at least three things are essential; (1) There must be in fact two or more co-existing remedies between which the party has the right to elect; (2) the remedies thus open to him must be inconsistent; and (3) he must, be actually bringing his action or by some other decisive act, with knowledge of the facts, indicate his choice between these inconsistent remedies. Any unambiguous act consistent with and inconsistent with others will be deemed conclusive evidence of an election. Thus where the remedies are so inconsistent that the pursuit of one necessarily involves or implies the negation of the other, the party who deliberately and with full knowledge of the facts invokes one of such remedies is said to have made his election, and cannot thereafter have the benefit of the other."

On page 29 of the same text it is stated:

"While the decisions are not harmonious as to the effect of commencing an action to enforce one of the two or more remedial rights arising out of the same facts, in the absence of mistake, or some other legal excuse, according to the weight of the authority the mere commencement of any proceeding to enforce one remedial right, in a court having juris-

diction to entertain such proceeding, is such a decisive act as to constitute a conclusive election, barring the subsequent prosecution of inconsistent remedial rights. . . . "

In the case at bar plaintiff was bound to have had knowledge of all the facts, and with full knowledge of such facts, on December 24, 1942, it instituted a suit at law in the Circuit Court of Pinellas County to recover a judgment against the defendant upon the identical cause of action in controversy here. To the declaration in that case defendant filed a demurrer, pleading therein the three year statute of limitations, which demurrer was sustained and the suit at law was dismissed. While the record does not disclose the entry of any "final" judgment, the effect of the order sustaining the demurrer, wherein the statute of limitations was pleaded, was to *terminate* the litigation in that forum. It is true that plaintiff could have made a motion for the entry of a "formal" judgment and have taken writ of error, but where there is no dispute that the three year statute of limitation had run, such proceeding would have been a mere idle gesture; and while there was no "final," "formal" judgment entered to the effect that "The plaintiff take nothing by its said plaint and the defendant do go hence without day," the plaintiff in this case had, never the less, pursued its remedy in the law court to finality; and having done so the writer is of the opinion that it has made a valid, binding election of its remedies and is now precluded from coming into a court of equity upon a different and inconsistent theory to seek redress for the identical wrong.

While I do not agree with all of the reasoning set forth by the chancellor in his opinion, I think the decrees here complained of were proper, and regardless of the reasons given for the entry thereof, that they should be affirmed.

Affirmed.

BUFORD, C. J., BROWN and THOMAS, JJ., concur.