134 So.2d 290 (1961)
In re ESTATE of Edward A. BROWN, Deceased.
SIRE PLAN, INC., Appellant,
v.
Grace R. BROWN, Appellee.
No. 2150.
District Court of Appeal of Florida. Second District.
November 8, 1961.
*291 Charles J. Collins, Jr., Orlando, for appellant.
Fletcher G. Rush and John T. Pattillo, Orlando, for appellee.
WILLSON, J.H., Associate Judge.
The Sire Plan, Inc., has appealed from an order of the County Judge's Court of Orange County, Florida, assigning dower to the appellee, Grace R. Brown, as widow of Edward A. Brown, deceased, in a fund of $8,000, which appellant claims is its property rather than an asset of decedent's estate.
*292 The record shows that decedent had been appellant's attorney. In that capacity he received from it $20,000 for use in purchasing the stock of one James E. Keezel in the Winter Park Loan Corporation. Decedent, for reasons not relevant to this appeal, was to contract for and purchase this stock in his own name.
Decedent did enter into a contract with Keezel for the purchase of the stock, and paid him $20,000 as earnest money, but Keezel, claiming that decedent had defaulted on the contract, refused to deliver the stock and retained the earnest money. Decedent then brought suit against him in the Circuit Court of Orange County, Florida, seeking to recover damages in excess of $20,000.
While this action was pending Brown died, and an administration was opened upon his estate in the County Judge's Court of Orange County, Florida. The only asset listed in the inventory filed by the personal representative was described as,
"Possible interest in a legal action pending in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida, entitled Edward A. Brown v. James E. Keezel, at Law No. 33989."
Appellant duly filed a claim against decedent's estate, the pertinent portion of which we set forth verbatim:
"The Sire Plan, Inc., a New York corporation, having its principal office at 115 Chambers Street, City, County and State of New York, hereby asserts claim against the estate of Edward A. Brown for the sum of $20,000.00, or proceeds of said sum, for monies entrusted to decedent, as attorney for claimant, for the specific purpose of purchasing, on behalf of claimant, the interest of James E. Keezel, in and to all issued stock, and all furniture, fixtures, books of account, etc. of Winter Park Loan Corporation, Winter Park, Florida. Decedent paid said sum of $20,000.00 to James E. Keezel, who, thereafter, refused to consummate contract of sale. Decedent brought action against James E. Keezel, in Florida, and, upon information and belief, the sole asset of this estate will be the fund paid in settlement of said lawsuit against James E. Keezel. Annexed hereto and made part hereof is photostatic copy of statement of decedent, dated September 26, 1958, duly acknowledged by decedent, substantiating the aforementioned facts."
The "statement of decedent" to which this claim refers, omitting the signature, is as follows:
"Know All Men By These Presents, that I, Edward A. Brown, the undersigned, do hereby sell, assign, transfer and set over unto The Sire Plan, Inc., a New York Corporation, of 115 Chambers Street, New York 7, N.Y., all the avails and proceeds derived from or arising out of a certain action in which I am plaintiff, now pending in the State of Florida against the Winter Park Loan Corporation, of Winter Park, Florida.
"This assignment is made in consideration of fact that all the funds and monies involved in said litigation are the funds and property of said The Sire Plan, Inc.
"Dated: New York, N.Y., September 26, 1958."
It appears from the record that decedent had no action pending against the Winter Park Loan Corporation, and that the only action which he had pending in the State of Florida was that against Keezel.
Decedent's personal representative was substituted as Plaintiff in the action, and, with the approval of the probate court, accepted $8,000 in settlement.
Appellee then petitioned the probate court to assign her dower in the $8,000 fund as an asset of decedent's estate. Appellant *293 opposed the petition on the ground that it had title to the fund by assignment from decedent. The probate court, after hearing the testimony of the parties, granted the petition.
The other facts disclosed by the record have no bearing on the decisive question in this appeal, viz., did the probate court have jurisdiction to determine whether the title to the $8,000 fund was in appellant or in decedent's estate?
The answer to this problem will be more readily reached if we begin its solution with the relationship between decedent and appellant and its legal consequences. The relationship was that of attorney and client. It was one of trust and confidence. The funds received by decedent from appellant, no matter what form they might have taken, were held in trust. In event decedent had failed to properly account for them, appellant could have chosen to treat them as the corpus of a trust and maintained an appropriate action in equity for their recovery; or he could have treated the obligation of decedent to account for the funds as a matter of contract and brought an action at law for money had and received. Armour & Company v. Lambdin, 154 Fla. 86, 16 So.2d 805. Upon his death the funds did not become an asset of his estate which were subject to dower. 1 A Bogert Trusts and Trustees, 40.
This Court in In re Feldman's Estate, Fla. App., 109 So.2d 407, 410, has pointed out "the prevalent uncertainty as to the extent of a county judge's jurisdiction" in cases where the title to real property is at issue. There is an even greater uncertainty with respect to disputes over title to personal property. This arises from the broad general terms employed by the makers of the constitution and the legislature in defining the jurisdiction of the county judge's courts, and from the effect upon these terms of other constitutional provisions. There are, however, some well defined principles relating to the jurisdiction of the county judge's court which materially reduce this uncertainty when applied to the instant case.
The county judge's courts have no jurisdiction except that which is conferred upon them by the constitution and by statutory enactment, and such as may be incidentally necessary to the execution of these powers. State ex rel. West's Drug Stores, Inc. v. Cornelius, 110 Fla. 299, 149 So. 332; In re Coleman's Estate, Fla.App., 103 So.2d 237. The county judge's court is not a court of general jurisdiction according to the course of the common law. Mott v. First National Bank of St. Petersburg, 98 Fla. 444, 124 So. 36. In no event does it have jurisdiction in cases at law in which the demand or value of the property involved exceeds one hundred dollars. Section 7(3) of Article V of the Constitution. It has no jurisdiction in purely equitable actions. Ritch v. Bellamy, 14 Fla. 537; Mott v. First National Bank of St. Petersburg, supra; First National Bank of St. Petersburg v. McDonald, 100 Fla. 675, 130 So. 596; Rinehart v. Phelps, 150 Fla. 382, 7 So.2d 783; Moskovits v. Moskovits, Fla.App., 112 So.2d 875; In re Shepherd's Estate, Fla. App., 130 So.2d 888. We turn now to the constitutional and statutory provisions which are material in this case.
These provisions are as follows:
"The county judge's courts shall have * * * jurisdiction in all cases at law in which the demand or value of property involved shall not exceed one hundred dollars; * * * The county judge's courts shall have jurisdiction of the settlement of the estate of decedents * * *, to take probate of wills, to grant letters testamentary and of administration * * *, and to discharge the duties usually pertaining to courts of probate." Constitution, Section 7(3), Article V, F.S.A.
"(1) The proceedings upon any petition for assignment of dower shall be informal and summary.

*294 "(2) On any petition for assignment of dower, the right of dower as well as the admeasurement thereof, shall be determined, and mesne profits from the date of the death of the decedent shall be included in the judgment. The county judge in whose court the administration of the decedent's estate is pending shall have plenary jurisdiction to assign dower in all property, real or personal, located in any county in the state. But no such judgment shall become effective in any other county until a duly certified copy thereof has been recorded in such other county in the judgment lien record.
"(3) Upon written demand of any party filed twenty-four hours before trial, the question of right of dower shall be submitted to a jury of six persons. The party demanding a jury trial shall, with the filing of his demand, deposit with the county judge sufficient funds to pay for summoning the jury and the fees of the jurors. Fifteen jurors shall be summoned from the body of the county and not from bystanders." Section 733.12, Fla.St. 1959, F.S.A.
"The circuit courts shall have exclusive original jurisdiction in all cases in equity except such equity jurisdiction as may be conferred on juvenile courts, in all cases at law not cognizable by subordinate courts, * * * in all actions involving the titles or boundaries of real estate. * * *" Constitution, Section 6(3), Article V.
These constitutional and statutory provisions were construed in In re Lawrence's Estate, Fla., 45 So.2d 344. The Court said
"The jurisdiction of the County Judge is expressly conferred so long as it relates to `the duties usually pertaining to courts of probate.' The allotment of dower, under ordinary conditions, is clearly within this grant of jurisdiction. The statute declares that `The county judge in whose court the administration of the decedent's estate is pending shall have plenary jurisdiction to assign dower in all property, real or personal, located in any county in the state.'"
"As here used the words `all property' must have reference to `decedent's estate.' Jurisdiction to assign dower in the decedent's estate contemplates a quasi-administrative power to make a finding, for administrative purposes, of which assets belong to the estate. But the constitution vests in the Circuit Court `exclusive original jurisdiction in all cases in equity * * * and * * * all actions involving the titles or boundaries of real estate.'"
"It clearly follows that when, as here, it is made to appear that third parties bona fides assert title adverse to the estate in real estate claimed by the personal representative or beneficiaries to constitute a part of the estate, resort must be had to the Circuit Court to settle such question of title, if this is necessary to a proper administration of the estate."
It is evident that the Court found the clue to its interpretation of Section 7(3) of Article V of the Constitution in the clause  "and to discharge the duties usually pertaining to courts of probate."
The constitutional history of this clause begins with Section 9 of Article V of the Constitution of 1838. It was therein provided that:
"The General Assembly shall provide by law, for the appointment in each county, of an officer to take probate of wills, to grant letters testamentary, of administration and guardianship; to attend to the settlement of estates of decedents, and of minors, and to discharge the duties usually pertaining to courts of ordinary * * *."
It appears unaltered in the Constitutions of 1861, 1865 and 1885, except that in the Constitution of 1885 the word "ordinary" was changed to "probate."
*295 When the framers of the Constitution of 1838 conferred upon the probate office "the duties usually pertaining to courts of ordinary", they undoubtedly had in mind the duties usually pertaining to courts of probate in the territory of Florida and in the American judicial system. In subsequent constitutions the clause has the same reference. Ex parte Scudamore, 55 Fla. 211, 46 So. 279.
As the language used in In re Lawrence's Estate, supra, indicates, this clause enlarges the jurisdiction of the county judge's court to include those duties usually pertaining to courts of probate, and not specifically enumerated therein. The controversy between appellant and appellee was one between an estate and a stranger thereto. It is generally held that the determination of such controversies is not one of the duties usually pertaining to courts of probate. 21 C.J.S. Courts § 303, p. 547 et seq. Among the cases from other jurisdictions so holding are Hewitt's Appeal, 53 Conn. 24, 36, 1 A. 815; In re Campfield's Estate, N.J. Prerog., 98 A. 381; In re Singleton's Estate, 26 Nev. 106, 64 P. 513; Ex parte Casey, 71 Cal. 269, 12 P. 118; Central Wisconsin Trust Co. v. Schumacher, et al., 230 Wis. 591, 284 N.W. 562.
In Hewitt's Appeal, supra [53 Conn. 24, 1 A. 818], the Court said,
"Courts of probate settle estates. They settle them among the persons originally interested in them * * * The appellees are outside parties. They have no interest in the estate except as purchasers. They bring this controversy before the court, and object to the setting out of dower to the widow, on the ground of equity pertaining to them in their purchase. Such equity does not grow out of the distribution of the estate, neither does it arise between the persons originally entitled to it, but grows out of a purchase by strangers to the estate, and cannot be administered by the probate court."
In re Campfield's Estate, supra, is more nearly in point since it involved personal rather than real property. The Court said:
"These two appeals are taken by the Orange Memorial Hospital from decrees of the orphans' court of Essex County made on April 30, 1915.
"The first decree dismissed exceptions filed by the hospital to the account of the executors of this estate; and the second decree allowed the account in all things as reported.
"The hospital excepted to the allowance of the account because `the executors have included in the inventory, as filed, and have embraced in the account, now asked to be allowed, 50 shares of the capital stock of the United New Jersey Railroad & Canal Company, as if the said stock were a part of the estate. This exceptant claims that the said stock was given by decedent, in her lifetime, to this exceptant, and that it forms no part of the estate, and should be delivered by the executors to the corporation and not included in their accounting or inventory.'
"It is agreed by counsel that there are but two questions to be considered in determining these appeals, viz.: First, the authority of the orphans' court to hear the exceptions; and, second, has the hospital shown itself to be a party interested in the settlement of the account of the executors of this estate?
"Appellant claims that its exceptions were addressed to the general jurisdiction of the court, not as a creditor, but to prevent the executors from violating or disregarding the express written direction and wishes of the testatrix. Its contention is that decedent having made a gift to it of the stock in question in her lifetime (and which was found among her effects after her death), the orphans' court should have exercised the jurisdiction it possessed, *296 and by hearing the exceptions, determined to whom the stock belonged.
"I have not found any statute conferring such jurisdiction on the orphans' court, and no case has been called to my attention in which such jurisdiction is recognized.
"In Partridge v. Partridge, 46 N.J. Eq. 434, 19 Atl. 662, affirmed 47 N.J. Eq. 601, 22 Atl. 1075, it was held that the orphans' court has no jurisdiction to try disputed claims, except in cases of insolvent estates.
"In McSpirit's Estate, 73 N.J. Eq. 613, 68 Atl. 755, a case very much in point, Chancellor Magie held that under the jurisdiction to pass upon the fairness of an inventory, the orphans' court may not determine the title to choses in action, and that a claim to such jurisdiction was unprecedented."
Our research discloses no reported cases in this State which take a view contrary to the one expressed in the decisions above cited. We conclude, therefore, that the determination of the dispute between appellant and appellee does not fall into the category of the duties usually pertaining to courts of probate either in this State or in other American jurisdictions.
Unless inhibited by some constitutional provision, the legislature may, of course, confer jurisdiction on the county judge's court to determine controversies between an estate and strangers thereto as an incident of its probate jurisdiction. An examination of the probate law reveals no instance in which such jurisdiction is expressly conferred. On the contrary, in the case where it would be most fitting, viz., the determination of contested claims against the estate, the creditor is expressly remitted to an "appropriate suit, action or proceeding." Section 733.18, Fla.St. 1959, F.S.A. The only statute that could confer such jurisdiction by implication, in the case now before us, is Section 733.12, Fla.St. 1959, F.S.A.
As the Supreme Court said in In re Lawrence's Estate, supra, this statute provides that "the proceedings upon any petition for the assignment of dower shall be informal and summary." It "contemplates a quasi-administrative power to make a finding, for administrative purposes of which assets belong to the estate," and "the allotment of dower, under ordinary circumstances." As used therein "the words `all property' must have reference to `decedent's estate,'" and would not include property held by decedent in a fiduciary capacity.
An earlier statute on assignment of dower provides that "The proceedings upon * * * petitions for dower shall be in a summary way * * *." Thompson's Digest, 186, McClellan's Digest 477. In Milton v. Milton, 14 Fla. 369, the Supreme Court referred to this statute, as "a special and summary proceeding in which no relief other than that specially authorized by the act can be granted." This construction was followed in Godwin v. King, 31 Fla. 525, 13 So. 108, and is equally applicable to the statute we are considering. The language of Section 733.12, Fla.St. 1959, F.S.A., evinces no intention, on the part of the legislature, to confer jurisdiction upon the county judge's court to determine controversies between an estate and strangers thereto as an incident to the assignment of dower.
In reaching the conclusion just expressed, we have not overlooked that Section 733.12, Fla.St. 1959, F.S.A., does differ in two respects from the statute under consideration in Milton v. Milton, supra, and Godwin v. King, supra. It confers plenary jurisdiction to assign dower, and it authorizes the empanelling of a jury to admeasure the dower. These provisions show no intent to enlarge the jurisdiction of the county judge's court to determine controversies such as the one between appellant and appellee, nor could they do so, for that would bring the statute into conflict with Section 6(3) of Article V of the Constitution.
*297 We quote again this provision of the Constitution:
"The circuit courts shall have exclusive original jurisdiction in all cases in equity except such equity jurisdiction as may be conferred on juvenile courts, in all cases at law not cognizable by subordinate courts, * * * in all actions involving the title or boundaries of real estate. * * *"
"Jurisdiction" as herein used refers to jurisdiction over "cases" and "actions", rather than to jurisdiction over particular species of property. It means, among other things, that the court has jurisdictional power to adjudicate the class of cases to which the particular case belongs. Lovett v. Lovett, 93 Fla. 611, 112 So. 768; Crill v. State Road Department, 96 Fla. 110, 117 So. 795; Curtis v. Albritton, 101 Fla. 853, 132 So. 677; Cobb v. State ex rel. Hornickel, 136 Fla. 479, 187 So. 151. The test of jurisdiction is not what class of property but what class of action is involved.
The controversy in this appeal involves the ownership of the $8,000 derived from the settlement of the action brought by decedent against James E. Keezel. If this fund had come into the hands of Edward A. Brown, appellant's right thereto, as we have previously said, could have been determined only in some appropriate action in equity or at law. Exclusive jurisdiction over the classes of action to which any of the available actions belong is conferred upon the circuit court by Section 6(3) of Article V of the Constitution, there being no constitutional or statutory court in Orange County, other than the circuit court, which has jurisdiction in actions at law where the amount involved exceeds five hundred dollars. The constitutional and statutory provisions relating to county judge's court do not work to divest the circuit court of this jurisdiction.
The appellant duly filed a claim against decedent's estate. This may not have been essential to its maintenance of an action against decedent's estate or personal representative for the recovery of the fund described in the claim. Estate of Grist, Fla., 83 So.2d 860, 56 A.L.R.2d 623. In any event, the mere filing of the claim did not confer jurisdiction upon the county judge's court over the fund, Spitzer v. Branning, 135 Fla. 49, 184 So. 770, nor do we think it altered in any way the nature of appellant's right therein.
While the question of jurisdiction was not raised in the probate court, this is not a condition precedent to its consideration here. In re Coleman's Estate, supra.
We must reverse the judgment of the lower court on the jurisdictional ground, with leave to the appellant to seek its remedy in a proper forum.
SHANNON, C.J., and KANNER, J., concur.