FRANK, Judge.
This appeal is from a final judgment that determined John Michael Carter, Jr., possesses the exclusive hunting rights in a parcel of real property, that denied an injunction sought by his sisters to prevent him from stocking the property with nonnative game for commercial hunting purposes, that required him to render to his sisters an accounting of the profits gained from the hunting business, and that allowed the sisters to hunt on the land. We reverse the judgment to the extent it vests exclusive hunting privileges in Carter, an issue raised on appeal by Carter’s sisters, but we affirm the denial of the injunction sought by the sisters and the award to them of an accounting, two disputed matters urged in Carter’s cross-appeal.
The factual setting is as follows: On January 14, 1975, Carter’s father and stepmother, Ruby Carter, conveyed a life estate to Carter in the exclusive hunting rights in real property located in Columbia County, Florida, reserving a life estate in the grant- or-father.[1] By quitclaim deed dated June 24, 1977, Carter reconveyed the hunting privileges to his father and Ruby. Carter’s father died in December, 1978 and his estate passed into probate. Pursuant to a marital agreement between Carter’s father and Ruby, his estate furnished Ruby with forty acres of land, a house, a car and $44,000 per year for twenty years in return for her waiver of any claim to his estate. About a year after their father’s death, Carter’s six sisters, collectively referred to as Espenship, conveyed to Carter the exclusive right to hunt on the subject land. On January 5,1980, Espenship and Carter executed a land trust agreement in conjunction with a warranty deed transferring their title and interests in the land to co-trustees, Carter and one of his sisters, Linda Nell Espenship. The deed contained no reference to the hunting rights previously conveyed to Carter by Espenship. This omission was corrected by the parties’ execution of a deed which expressly excepted from that transfer the previous conveyance of hunting rights to Carter. Prior to closing the estate, the personal representative executed two separate deeds: one granted Carter the “right to hunt” on the land; the other conveyed fee simple title to the property to Carter and his sisters in undivided ¼ shares. In 1984, Carter announced his intention to commercialize hunting on the jointly-owned property and to stock the land with non-native game to enhance its value as a hunting refuge. The sisters (Espenship) were opposed to Carter’s plan, desiring instead to preserve the land in its natural condition. Finally, on October 22, 1984, they filed this suit against Carter. Two days later, Ruby quitclaimed any interest she possessed in the exclusive hunting rights to Carter and Linda Nell Espenship as trustees under the land trust agreement. This appeal follows.
We have considered each of the points urged in this appeal; however, we discuss only those concerns necessary to the proper resolution of this matter. Initially, Espenship contends that the trial court committed error in reforming the 1977 deed to delete Ruby’s name as the co-grantee. We agree.
A conveyance to husband and wife creates an estate by the entirety when there is no express language in the deed demonstrating a contrary intent. In re Estate of Suggs, 405 So.2d 1360 (Fla. 5th DCA 1981). Carter misstates and expands the record before us when he claims that Ruby did not intend to create a tenancy by the entirety through the 1977 transfer of hunting rights from Carter to his father and Ruby as husband and wife. The record merely discloses that Ruby was not involved in procuring the 1977 deed from Carter and in fact could not remember the details regarding that deed’s execution. We can discern from her testimony, how *1110 ever, that she was acting at her husband’s behest in executing the 1975 deed; and the record is barren of any evidence disclosing a lack of intent on the part of Ruby, or her husband, to receive anything other than a tenancy by the entirety in the 1977 recon-veyance of the hunting rights. Carter’s testimony, alone, that it was not his purpose to include Ruby’s name in the 1977 deed is insufficient to overcome either the presumption of such a tenancy or to establish that the parties to the deed committed a mutual error. See Rutenberg v. Rutenberg, 334 So.2d 633 (Fla. 2d DCA 1976). Absent a showing of mutual mistake, the 1977 deed may not be reformed. American Fire & Indemnity Corp. v. State Farm Automobile Insurance Co., 483 So. 2d 122 (Fla. 1st DCA 1986); see also Kidd v. Fowler, 498 So.2d 969 (Fla. 4th DCA 1986). Accordingly, the presumption of a tenancy by the entirety controls and the exclusive right to hunt on the property passed to Ruby outside the estate upon her husband’s death. Moreover, that right was not included as a part of her waiver of interest in the husband’s estate. Bendl v. Bendl, 246 So.2d 574 (Fla. 3rd DCA 1971). Thus, the conveyance of hunting rights executed by Espenship after the father’s death failed to vest any title to those rights in Carter; they had no such title to pass. For the same reason, the personal representative’s conveyance to Carter of the right to hunt was a nullity. We, therefore, conclude that the 1984 quitclaim deed effectively conveyed Ruby’s exclusive interest in those rights to the trustees under the land trust agreement and the trial court’s cancellation of that deed was improper.[2]
Espenship also challenges the trial court’s denial of injunctive relief prohibiting the stocking of non-native game on the property. We find this contention mer-itless. Ordinarily, a person will not be enjoined from the lawful enjoyment of property unless it is clearly shown that the rights of others will be injured. Shivery v. Streeper, 24 Fla. 103, 3 So. 865 (1888). Moveover, an injunction is appropriate only when the injury sought to be avoided or remedied is irreparable, but the record before us demonstrates no likelihood of damage to the property or a depreciation in its value as an outgrowth of Carter’s plan to expand the hunting. Thus, because the trial court conditioned denial of the injunction on Carter’s strict compliance with section 372.265, Florida Statutes (1985), and on the preservation of the property from damage, the element of irreparable injury is not present.[3] See Jacksonville Electric Authority v. Beemik Builders & Constructors, Inc., 487 So.2d 372 (Fla. 1st DCA 1986).
Turning now to Carter’s cross-appeal, he asserts that the trial court’s finding that Espenship could hunt on the land under the same conditions and terms he must follow is inconsistent with its finding that Carter owned the exclusive hunting rights to the property. We need not respond to this contention, however, in light of our conclusion that Carter did not possess exclusive hunting privileges; that interest was transferred by Ruby to the trust. We also find no merit in Carter’s attack on the trial court’s order requiring him to render an accounting to Espenship. The record contains sufficient evidence of Carter’s improper handling of the trust’s funds in violation of his capacity as a trustee. Thus, the trial court was well within its equitable authority to compel such an accounting. Armour & Co. v. Lambdin, 154 Fla. 86,16 So.2d 805 (1944).
Accordingly, we reverse the trial court’s reformation of the 1977 quitclaim deed and *1111 its cancellation of the 1984 deed. In all other respects, the judgment is affirmed.
ERVIN and WIGGINTON, JJ., concur.

. The Í975 deed contains a notation that: "This deed is made upon the condition that the Grantee shall not sell or lease any rights herein conveyed to him." Such a condition may be construed as an unreasonable restraint on the alienation of property. See Davis v. Geyer, 151 Fla. 362, 9 So.2d 727 (1942). Even without that construction, however, the restrictive covenant may be voided without the deed being vitiated in its entirety. See Iglehart v. Phillips, 383 So.2d 610 (Fla.1980).

. As a consequence of the trial court’s termination of the land trust for the reason that it is unworkable, an aspect of the final judgment not under challenge, the parties possess the exclusive right to hunt on the property as tenants in common.

. Section 372.265(1), Florida Statutes (1985), which provides as follows, offers a shield against detrimental infection of the property by Carter:
It is unlawful to import for sale or use, or to release within this state, any species of the animal kingdom not indigenous to Florida without having obtained a permit to do so from the Game and Fresh Water Fish Commission.